MIRIAM MILTON v. BIESANZ STONE COMPANY.[1]

December 7, 1906.

Nos. 14,898—(74).

**Master and Servant—Verdict.**

In an action to recover for the death of plaintiff's intestate, a boy sixteen years of age, whose death was alleged to have been caused by the negligence of defendant, the evidence is considered, and *held* sufficient to support the verdict of the jury.

**Appeal—Harmless Errors.**

It appearing from a special finding of the jury, in answer to a specific question submitted to them, the ground upon which the general verdict was founded, errors of the court in reference to other theories of the case *held* not reversible.

[1]Reported in 109 N. W. 999.

**Assignments of Error.**

Certain assignments of error considered, and *held* to present no reversible error.

Action in the district court for Winona county by the plaintiff, as administratrix of the estate of Sylvester A. Milton, deceased, to recover $5,000 for his death. The case was tried before Snow, J., and a jury which returned a verdict in favor of the plaintiff for $1,700. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Morton Barrows,* for appellant.

*Webber & Lees,* for respondent.

BROWN, J.

The facts in this case are as follows: Plaintiff's intestate was a young man sixteen years of age, and at the time of the accident resulting in his death was in the employ of defendant near the city of Winona. Defendant owned a stone quarry, in connection with which it operated machinery for crushing stone to be used in the manufacture of macadam. The crusher was located in a pit, or deep excavation in the ground, nine feet deep, nineteen feet long, and nine feet wide, which was covered with a substantial plank roof or floor on a level with the ground. At one side near the crusher stood a derrick of the ordinary kind, consisting of a mast and boom, with pulleys and cable used for handling rock either in small or large pieces. The derrick as well as the stone crusher was operated by a steam engine located near the pit, on the side opposite the derrick. The engine was supplied with a drum, around which the cable used in connection with·the derrick was wound when raising stone. The cable passed from the drum, on a level with the ground, across the crusher pit, to the derrick mast,· and was suitably covered, to protect from injury employees coming in contact with· it, up to and beyond the pit to the mast; but it was not so protected as it extended ·across the pit. It passed underneath the boards covering the same, but no provision was made to prevent it from falling to the bottom of the pit when loosened from the drum, unless the slack was taken up at the other end as fast as unwound. It extended from the ground to the top of the mast, thence to the end of the boom, where it was attached to hooks used to

fasten upon stone when lifted and lowered to the crusher. The outer surface of the cable was steel; its center being rope. The distance from the engine to the mast was forty eight feet, and in the neighborhood of thirty feet from there to the end of the boom. At the time of the accident complained of, deceased was attempting to pull down the hooks attached to the cable for the purpose of attaching them to a load of stone to be raised and lowered into the crusher. He had some difficulty in doing this, and the president of defendant company, who was there in charge of and superintending the work, took hold of the cable at the point where it left the drum, pulled it therefrom, and pushed it through its covering toward the pit. At the bottom of the pit was located a shaft, which operated the crusher and which revolved at a speed of about two hundred fifty revolutions per minute. Upon the hub of the belt wheel, which operated the shaft, projecting an inch or more, was a set screw or safety pin, revolving with the shaft and wheel. As the cable was loosened from the drum by the president of the company, it fell into the pit, and in some way caught upon this set screw and was instantly wound about the shaft, with the result that deceased, who had hold of the hooks at the other end, was drawn suddenly into the air to the top of the boom, about thirty feet, where his hold was loosened, and he was thrown to the ground, striking his head on a pile of rock, and killing him.

The negligence charged in the complaint, and upon which plaintiff relied for recovery, consisted in the failure of defendant to take proper measures to support the cable as it extended over the pit, to prevent it, when loosened from the drum, from falling into the same and coming in contact with the revolving shaft, and also in failing properly to warn and instruct deceased of the dangers incident to his employment. The jury returned a general verdict for plaintiff, with a special finding, in answer to a specific question as to the cause of the accident, that it was caused by the failure of defendant to provide means to prevent the cable from falling into the pit when loosened from the drum. Defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

It is contended by defendant in this court (1) that the evidence is wholly insufficient to justify a finding of negligence against defend-

ant; (2) that it conclusively appears from the evidence that whatever negligence on the part of defendant is shown arose from the act of a fellow servant of deceased, for which defendant is not liable; and (3) that deceased was guilty of contributory negligence.

The first two propositions may be disposed of together. They embody appellant's principal contention on this appeal. It is insisted that no negligence was shown, and, further, that the president of the company, while engaged in the work of unwinding the cable from the drum to enable deceased to lower the hooks, was engaged in the common employment of defendant, and was a fellow servant. We do not concur in either of these contentions, though we deem it unnecessary to consider the merits of the fellow servant proposition. It appears from the special verdict of the jury that the accident complained of was caused by the failure of defendant to take proper precautions to prevent the cable from falling into the pit, and our examination of the evidence leads to the conclusion that the verdict in this respect is fully sustained. It appears affirmatively, therefore, upon what issue the jury based its verdict, and it is immaterial whether, in unwinding the cable, the president was engaged in the common employment of defendant and was a fellow servant of deceased. The charge of the court that defendant was liable for his negligence on the rule of vice principal, if error, which, however, may be doubted on the facts of the case, was error without prejudice. Rollins v. St. Paul Lumber Co., 21 Minn. 5; Kraemer v. Deustermann, 40 Minn. 469, 42 N. W. 297; Maceman v. Equitable Life Assur. Co., 69 Minn. 285, 72 N. W. 111; Kurstelska v. Jackson, 93 Minn. 385, 101 N. W. 606. Had some means been adopted by defendant to prevent the cable from falling into the pit when unwound from the drum, which was entirely practicable, no accident of the kind here in question would have happened. The case comes fairly within the rule holding the master liable for injuries caused by his negligent acts or omissions, which might reasonably have been anticipated as likely to result therefrom.

There is no particular merit to the claim that plaintiff's intestate was guilty of contributory negligence. He was a young man, sixteen years of age, with no previous experience in this sort of work, and wholly unfamiliar with defendant's machinery or the operation of its

works. He had been employed at this work only about three hours at the time of the accident, and was not instructed or in any manner warned of the dangers incident to his employment. It was a fair question for the jury to say whether he was guilty of contributory negligence in not releasing his hold on the hooks at the time the cable caught on the revolving shaft. The evidence tends to show that he was jerked so suddenly into the air that he had no opportunity for thought or reflection. The court properly submitted the question to the jury.

A few days after the accident the president of the company called upon plaintiff, mother of deceased, for the purpose of settling and adjusting any claim for damages she might have against defendant. He stated that such was the purpose of his visit, and plaintiff was permitted on the trial to testify, over defendant's objection, to a conversation had with him relative to the accident. He stated to her all that occurred at the time, the repetition of which by the witness was objected to as hearsay and inadmissible. The president had not at that time been called as a witness, and the testimony was not offered for the purpose of impeachment, but as affirmative evidence tending to show the cause of the accident. Whether this evidence was admissible, we need not determine. It presents a doubtful question. In view of the fact that there was no substantial controversy in the evidence as to the accident, or the cause of it, and the further fact that the president of the company was later called as a witness and testified to substantially the same facts as detailed by plaintiff, the error in receiving the conversation was an error without prejudice. No harm resulted to defendant therefrom, and it is not entitled to a new trial, even though the admission of the statements of the witness to plaintiff was error.

A number of other assignments of error are made and discussed in the briefs, all of which we have fully considered, with the result that no reversible error is disclosed. It would serve no useful purpose as a precedent to discuss them in this opinion, and we refrain. The facts are not in dispute, at least those material to the merits of the case; the charge of the trial court, taken as a whole, was without substantial or prejudicial error; and the jury was fully advised of the rules of law applicable to the case. The damages are not excessive.

Order affirmed.