# GEORGE H. CLAPPER v. JACOB M. DICKINSON.[1]

### July 11, 1917.

### Nos. 20,455—(235).

**Violation of Federal Safety Appliance Act — proximate cause.**

1. An interstate railway carrier is liable in damages to an employee injured in the discharge of his duties, regardless of the position he may have occupied at the time he was injured, where the carrier's failure to comply with the Federal Safety Appliance Act is the proximate cause of such injury.

**Same — defective coupler.**

2. To recover for injury arising from a defective coupler, it is not material that the employee did not receive the injury in attempting to effect a coupling between cars.

**New trial — general verdict sustained by evidence and special findings.**

3. Where the special findings of the jury disclose the basis of the general verdict to be one for which, under the pleadings and evidence, defendant is liable, errors of the court in respect to other issues upon which defendant might or might not be liable are immaterial and no ground for a new trial.

**Same.**

4. The evidence supports the verdict, general and special, and the record presents no reversible error.

Action in the district court for Hennepin county against the receiver of the Chicago, Rock Island & Pacific Railway Company to recover $50,000 for injuries received while in the employ of that company. The case was tried before Molyneaux, J., and a jury which returned a verdict for $23,000, and answered in the affirmative the five questions specified in the third paragraph of the opinion. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Stringer & Seymour,* for appellant.

*George C. Stiles* and *D. C. Edwards,* for respondent.

[1]Reported in 163 N. W. 752.

BROWN, C. J.

The Chicago, Rock Island & Pacific Railway Company, a corporation organized under the laws of the state of Illinois, operates a line of railroad in and through several adjoining states, as such is engaged in interstate commerce, and subject to the Federal Safety Appliance Act. Defendant Dickinson is operating the road as receiver. Plaintiff was in its employ as a switching foreman at Moline, Illinois, and at the time in question was engaged with other employees in making up trains for the interstate service of the company. He received an injury while engaged in such work, by reason of the alleged defective condition of the coupler attachment of one of the cars being switched about the yard, and brought this action to recover therefor, charging such defect in the coupler and other items of alleged negligence, as the basis of his right of action. He had a verdict, and defendant appealed from an order denying his alternative motion for judgment or a new trial.

The facts which the evidence justified the jury in finding, stated without unnecessary detail, are substantially as follows: Plaintiff was superintending and assisting in making up interstate freight trains in the Moline yards. There are numerous yard tracks upon and over which the switching operations in making up such trains were carried on. In the course of the work a car loaded with pig iron, which will be designated as the pig iron car, was switched upon track No. 4, and there held in position by a wooden block in front of the wheels. The track is upon a grade, and that was the usual method of holding in place cars switched thereon. The next movement was the switching of another car, designated as the M. K. & T. car, upon the same track with the view of coupling it onto the pig iron car; both cars to form a part of the train being made up. Each was equipped with the automatic coupler which operates, when in proper order, by being brought together with sufficient force to cause the parts thereof to perform their functions. The car was "kicked back" upon that track, but when it came in contact with the pig iron car a coupling was not effected by reason, as plaintiff claims, of the defective coupler on that car. The force of the impact was sufficient, however, to move the pig iron car enough to permit the blocking to fall from the rail and released it from its position; the brakes thereon were not set. The M. K. & T. car started down the grade, and the switchman in charge of this

operation attempted to stop it by placing in front of the wheels thereof the block that had been released from the pig iron car as just stated. This method proved ineffective, the block fell from the rail, and the switchman then climbed to the top of the car, the same being an ordinary box car, and finally brought it to a stop by means of the hand brake thereon. Plaintiff was present when these operations were in progress, and took part therein. He noticed the failure of the couplers to work, and also that the M. K. & T. car was running down the grade with the switchman at the brake attempting to stop it. He supposed from the fact that the switchman was "hanging onto the brake" that for some reason it could not be set, and he picked up a block, and, when the car was finally stopped, placed it in front of the wheels to hold the car in place. In the meantime, a fact unknown to plaintiff, the pig iron car having been released by the impact when the two cars came together was also running down the grade about a car length behind the M. K. & T. car. Immediately upon placing the block in front of the wheels of that car, which was then at a standstill, plaintiff stepped upon the track, intending to pass to the other side, when the pig iron car violently struck or collided with the M. K. & T. car forcing it forward against plaintiff and throwing him down upon the track. He was run over by the car and received such injuries that it became necessary to amputate the left leg above the knee and one-half of the right foot.

Though the complaint charged, and the court submitted to the jury, three grounds of negligence as the basis of plaintiff's right to recover, all thereof save the charge that the coupler upon the pig iron car was defective and out of order are rendered immaterial by the special findings of the jury. In addition to their general verdict the court submitted to the jury 5 separate specific questions, all of which they answered in the affirmative. The questions were: (1) Whether plaintiff at the time of his injuries was engaged in interstate commerce. (2) Whether the coupler on the pig iron car was defective. (3) Whether the defect, if it existed, was the proximate cause or contributed to plaintiff's injury. (4) Whether it was an act of negligence to leave the pig iron car at the point heretofore stated in an insecure condition, without the brakes thereon being set. And (5) whether such act also contributed to cause the injury. These findings bring the case clearly within the Federal

137 M—27

Safety Appliance Act, and our examination of the record leads to the conclusion that they are fully supported by the evidence. We have therefore only to determine whether any of the contentions of defendant in respect to the issues upon which the verdict was founded present any error of a character to require a new trial. Errors, if any, upon other features of the case, in view of the special verdict, are immaterial. Elwood v. Saterlie, 68 Minn. 173, 71 N. W. 13; Maceman v. Equitable L. A. Soc. of U. S. 69 Minn. 285, 72 N. W. 111; Milton v. Biesanz Stone Co. 99 Minn. 439, 109 N. W. 999.

1. The principal claim of defendant is that the defect in the coupler and its failure to work, even though the result of defendant's negligence, is not a matter of which plaintiff can complain. This contention is based upon the rule, of general application, that where a statute is enacted for the benefit and protection of a particular class, in order to complain of a violation thereof an injured party must bring himself within that class. And the precise point is, that since plaintiff at the time of his injury was not engaged in coupling the cars together, he is not within the class for whose protection the Federal act was intended, and cannot therefore complain of the defect. Authorities are cited in support of the point. Johnson v. Southern Pac. Co. 196 U. S. 1, 25 Sup. Ct. 158, 49 L. ed. 363; U. S. v. Louisville & N. R. Co. 162 Fed. 185; Hohenleitner v. Southern Pac. Co. 177 Fed. 796; Burho v. Minneapolis & St. L. R. Co. 121 Minn. 326, 141 N. W. 300. Counsel for defendant presented the case in the court below upon that theory of the law. But since the trial of the action and since the preparation of their brief in this court, the Supreme Court, the final authority upon all questions as to the construction of the Federal Safety Appliance Act, has put the question entirely at rest by a decision adverse to the contention here made. Louisville & N. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. ed. 931. In that case the court held that an interstate railway carrier is liable in damages to an employee injured in the discharge of his duty, regardless of the position he may have occupied at the moment he was injured, where the carrier's failure to obey the automatic coupler requirements of the Federal Safety Appliance Acts is the provimate cause of his injury. In that case as in the case at bar the employee was not engaged in attempting to effect a coupling of the cars when injured, but the jury found in each that the defect in the

coupling was the proximate cause of the injury. We therefore follow and apply the rule announced by the Layton case.

2. When switched onto track No. 4 the pig iron car was held in position by blocking the wheels thereof, the brakes thereon not being set. The jury found that this was an act of negligence, and that it contributed to plaintiff's injury. Defendant contends that, since that was the customary manner of holding cars in place, plaintiff assumed all risks reasonably to be anticipated therefrom and cannot now complain. We do not sustain the point. It may be assumed that plaintiff, being engaged in the particular switching operations, knew of the situation of that car, and that it was held in the usual manner by blocking it. But, so far as shown by the record to the contrary, that method securely held the car in place, and it would not have moved had not the coupler failed to work when the two cars came together. The defect in the coupler was therefore the primary and the moving cause of the release of the car and its subsequent descent down the grade. And though the method of holding the car in place was a contributing cause, as found by the jury, it was not the direct and proximate cause of the accident. The doctrine of assumption of risk, therefore, has no application. If plaintiff was at fault at all in this respect, it was in the form of contributory negligence; carelessness in following a dangerous practice, if it was dangerous. But contributory negligence does not defeat a right of action under the statute. Counsel do not so claim, the sole contention being that plaintiff assumed the risk of injury from the insecure position of the pig iron car.

3. It is immaterial whether the hand brake upon the M. K. & T. car was or was not defective. Plaintiff, from the fact that the switchman was holding the brake wheel as heretofore stated, assumed that it was out of order and for that reason blocked the wheels thereof when the car was stopped. In the light of the facts as they appeared to plaintiff, it cannot be said that he was outside his duties in so acting. It is clear from his testimony that he did not know of the oncoming pig iron car. And, further, the verdict of the jury that the defective coupler was the proximate cause of the injury to plaintiff, renders the condition of the brake, actual or assumed, important only as it tends to explain the act of plaintiff in blocking the wheels when the car stopped.

4. This covers the case and all that we deem it necessary to say in dis-

posing of the points made by appellant. The evidence sustains the findings of the jury, there were no errors in the instructions of the court, or in other respects, justifying a new trial, and the order appealed from is affirmed.