## PHILADELPHIA & R. RY. CO. v. EISENHART.

(Circuit Court of Appeals, Third Circuit.   April 28, 1922.)

No. 2829.

1. **Master and servant ⬅129(6)—Violation of Safety Appliance Act must be proximate cause of injury.**

   A freight conductor, who was injured when couplers uncoupled and cars broke away and collided with a car on which he was riding, was entitled to recover under Safety Appliance Act March 2, 1893, § 2 (Comp. St. § 8606), if the defective coupler was the proximate cause of the injury, though accident was not caused by the conductor going between the cars to couple or uncouple them, the question as to the railroad's liability for failure to comply with the statute, depending on whether noncompliance therewith proximately caused the injury, without regard to the place and character of the work.

2. **Master and servant ⬅265(6)—Violation of Safety Appliance Act inferred from opening of couplers.**

   In action for injuries to freight conductor, sustained when cars parted on opening of couplers, the mere opening of the couplers *held* to warrant submission of whether the couplers were defective, in violation of Safety Appliance Act March 2, 1893, § 2 (Comp. St. § 8606).

3. **Master and servant ⬅112(1½)—Railroad's duty under Safety Appliance Act absolute.**

   Railroad's duty, under Safety Appliance Act March 2, 1893, § 2 (Comp. St. § 8606), to keep its couplers in a safe condition, is absolute, and is not discharged by the exercise of reasonable care and mechanical skill to properly equip cars with safe couplers.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Samuel D. Eisenhart against the Philadelphia & Reading Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiff in error.
Frank F. Davis, of New York City, for defendant in error.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The cars of a freight train were being distributed to several tracks in the yards of the defendant at East Penn, Pennsylvania. Eisenhart, the conductor, was riding on a draft of two cars which had been cut from the train and kicked to a siding. His task was to stop them at their destination. While these cars were still in motion the train parted by reason of the opening of couplers and another draft of cars broke away and, following down on the same track without a brakeman, collided with the car on which Eisenhart was riding, throwing him to the ground and causing him injury.

Eisenhart brought this action, charging negligence to the defendant for violating both the Safety Appliance Act and the rule of common law. Safety Appliance Act, § 2, 27 Stat. 531, and amendments (Comp. St. § 8606). He had a verdict. The defendant sued out this writ of error.

The case was tried mainly on the liability of the defendant for operating a car with a defective coupler in violation of the Safety Appliance Act, carrying, of course, the advantage to the plaintiff of relief from the law of assumption of risk and contributory negligence. The defendant maintains by this writ that under the evidence, as well as by a proper interpretation of several decisions of the Supreme Court construing the Safety Appliance Act, the plaintiff did not bring himself within the Act and that, in consequence, his right to recover, if any, was on the counts charging negligence under the rule of common law with its burden of assumption of risk and contributory negligence, and that, accordingly, the trial court erred in submitting the case on the statute.

Obviously, the plaintiff's injury was due to the uncoupling of the train at a place at which uncoupling was not intended and at which the plaintiff was not working. For evidence of negligence in support of the counts under the Safety Appliance Act the plaintiff relied upon the inference of a defective coupler, drawn from the fact that the couplers uncoupled, and upon testimony to the effect that when examined after the accident the couplers showed lost motion between the lock and knuckle, enough to have caused the cars to part.

Regarding as the test of compliance with the statute the equipping of cars "with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars," the defendant introduced evidence to the effect that the couplers were of an accepted type and in good condition, and had, both before and after the accident, coupled and uncoupled in the way provided by the statute. Having complied with this statutory standard, the defendant maintains that nothing more was required of it; and that, as the plaintiff was not injured by reason of the couplers failing to meet this standard but was injured some distance away by reason of a collision, the case comes within the decision of the Supreme Court in Lang v. New York Central R. R. Co., 255 U. S. 455, 41 Sup. Ct. 381, 65 L. Ed. 729, where it was said that the Safety Appliance Act "was intended to provide against the risk of coupling and uncoupling

and to obviate the necessity of men going between the ends of cars. It was not * * * to provide a place of safety between colliding cars," quoting from S. L. & S. F. R. R. Co. v. Conarty, 238 U. S. 243, 35 Sup. Ct. 785, 59 L. Ed. 1290. Reliance by the defendant upon its interpretation of the Lang decision compels a review of several decisions of the Supreme Court bearing on the Safety Appliance Act.

The first is the Conarty Case. In this case a car without a coupler or drawbar at one end was on a switch awaiting removal for repair. A switching engine with which the deceased was working came along the same track and a collision ensued. The deceased was standing on the footboard at the front of the engine and was caught between the engine and the body of the car. Had the coupler and drawbar been in place they would have kept the engine and the car sufficiently apart to have prevented the injury. They would not have prevented the collision.

The question arose whether at the time he was injured the deceased was within the class of persons for whose benefit the Safety Appliance Act required that the car be equipped with automatic couplers and drawbars of standard height. Inquiring into the general purpose of the act and the evil it was intended to prevent, the Supreme Court alluded to the danger to men going between cars to couple and uncouple them and said that the principal purpose of the enactment of the statute was "to obviate the necessity for men going between the ends of the cars." It found that the deceased, "who was not endeavoring to couple or uncouple the car or to handle it in any way, but was riding on the colliding engine, was not in a situation where the absence of the prescribed coupler and drawbar operated as a breach of a duty imposed for his benefit." Holding that the plaintiff was not within the class of persons for whose benefit the statute was enacted, the court denied recovery. This decision was regarded, either rightly or wrongly, as an interpretation of the Act limiting its application, so far as automatic couplers are concerned, to those whose duty it is to couple and uncouple cars. In considering the effect of this decision upon later decisions and upon the case at bar it is pertinent to note that the court very carefully pointed out that

"It is not claimed, nor could it be under the evidence, that the collision was proximately attributable to a violation of [the] provisions [of the Act] but only that had they been complied with it would not have resulted in injury to the deceased."

In Louisville & Nashville R. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931, the next case in order, an engine, pushing a car ahead of it, came into a switch and attempted to couple a draft of five cars. It struck the cars with such force that the couplers refused to couple automatically by impact and the whole draft was driven down the track and came into collision with a standing train with such violence that the plaintiff, who was on one of the five cars for the purpose of releasing the brakes, was thrown to the track and injured. As the plaintiff did not sustain injury when coupling or uncoupling cars, the defense was based on the claim that it had been decided in the Conarty Case that the Safety Appliance Act is "intended only for the benefit of employés injured when between cars for the purpose of

coupling or uncoupling them." The Supreme Court, evidently desiring to dispel this view, said:

"While it is undoubtedly true that the immediate occasion for passing the laws requiring automatic couplers was the great number of deaths and injuries caused to employés who were obliged to go between cars to couple and uncouple them, yet these laws as written are by no means confined in their terms to the protection of employés only when so engaged. The language of the acts * * * makes it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required—not from the position the employee may be in or the work which he may be doing at the moment when he is injured."

Again pointing out that in the Conarty Case it was not claimed that the *collision* resulting in the injury was proximately attributable to a violation of the Safety Appliance Act, the court laid down a rule—from which it has not departed—that

"Carriers are liable to employés in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty."

The court sustained the judgment on the finding that the failure of the couplers automatically to couple by impact was the proximate cause of the collision and resultant injury.

Later came Minneapolis & St. Louis Railroad Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995, a case in which a train parted because of the opening of a coupler on one of the cars, resulting in an automatic setting of the emergency brakes on the detached draft upon which Gotschall was riding and a sudden jerk which threw him off the train under the wheels—facts singularly similar to those of the case at bar. While the case went off on another question, the court sustained the judgment for the plaintiff consistently with its former pronouncement that whenever the failure to obey the safety appliance laws is the proximate cause of the injury the carrier is liable.

Such was the law until Lang v. New York Central R. R. Co., supra. In this case a car without a drawbar or coupler was standing on a siding. The decedent was a brakeman riding on a draft of cars kicked toward the crippled car. He knew the condition of the car. A collision occurred and the decedent was crushed between the car upon which he was riding and the standing car. It was not intended that he should couple his draft with the defective car, but that he should stop his draft before it reached the car. For some reason he failed to do so and collision followed. Recovery was not allowed.

The plaintiff in error regards the law of the Lang Case as a reversal to the law of the Conarty Case, not as explained in the Layton Case, but as it was first popularly understood. This position is taken, doubtless, because the court cited and affirmed the Conarty Case. But the court also affirmed the Layton Case, restating with emphasis the rule of proximate cause which, being invoked in the Layton Case, distinguished that case from the Conarty Case, saying:

"But necessarily there must be a causal relation between the fact of delinquency and the fact of injury and so the case declares, * * * carriers are liable to employés in damages whenever the failure to obey these safety

appliance laws is the proximate cause of injury to them when engaged in the discharge of duty."

The court held in the Lang Case, as in the Conarty Case, that "the collision was not the proximate result of the defect" in the safety appliance, or, stated differently, "that the collision under the evidence cannot be attributed to a violation of the provisions of the law, 'but only that, had they been complied with, it [the collision] would not have resulted in injury to the deceased.'" The judgment for the defendant was sustained.

[1] We cannot agree with the plaintiff in error in its contention that the Supreme Court in the Lang Case construed the Safety Appliance Act as restricting the liability of carriers to equipping cars with couplers of the standard required and as limiting its protection to employés in the act of or at the place of coupling and uncoupling cars. Whatever difference there may be in the opinions, the three cases cited, as also the Gotschall Case inferentially, were tried and decided on the principle of causal relation between the fact of delinquency and the fact of injury, that is, they were, with entire consistency, tried on the question whether on the facts of each case the carrier's failure to obey the statute was or was not the proximate cause of injury to the employé, without regard to the place and character of his work. This is the test of liability.

Returning to the case at bar, we find that the learned trial judge submitted the case on the question of proximate cause strictly in line with these decisions. Therefore, he did not commit error in principle.

The remaining assignments of error question the sufficiency of the evidence to sustain the submission and challenge the adequacy of the charge.

Maintaining there is no testimony to prove the way in which the train separated, the defendant complains particularly of that part of the charge in which the trial judge said:

"I say to you, as a matter of law, under the evidence in this case, if it has been of that degree of strength and kind to carry conviction to your minds, you may find that the real cause of the injury to this man was this defective coupling. If you do, I say to you the plaintiff is entitled to recover. If the plaintiff is entitled to recover, of course, he is entitled to your verdict, as a matter of law. But if this evidence has failed to persuade you that you should come to that conclusion, then your verdict should be in favor of the defendant, and you are done with the case."

[2] As the whole controversy had revolved around the question whether the couplers at the place where the train parted were defective, we think this charge was proper, if warranted by the evidence. The fact is the couplers opened, the train parted and a collision followed as a direct result. No one disputes this. There was testimony by one witness to the effect that there was lost motion in the coupler parts which explained their action. This was testimony of a defect. We think it was admissible. But even if it were not sufficient, the case was properly submitted and the verdict should be sustained on the inference of the defendant's negligence to be drawn from the mere opening of the couplers. M. & St. L. R. R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995.

At the end of an elaborate charge, including the instruction quoted, counsel for the defendant, conceiving that the learned trial judge had not adequately presented the defendant's side of the case on the evidence produced in its behalf, hastily drafted and presented an additional point to be charged to the jury. The trial judge, feeling that he had covered the point, refused to charge it. The point is as follows:

"If the jury believe under all the evidence produced in this case that the couplers, which it was testified separated, were in proper condition of construction and repair, and that they were in as·safe a condition·for railroad operation as reasonable care and mechanical skill could make them, capable of coupling automatically by impact in the manner required by the Safety Appliance Act, then you may find that the defendant has performed its legal duty, and your verdict may be for the defendant."

The curious thing in this situation is that, if the trial judge had attempted to cure the questioned adequacy of his charge by allowing the point, he would have injected a fatal error into a charge otherwise without error, because the point itself contained an error of law.

The defendant might have asked, in the terms of the point, for an instruction to the jury that if they believe under all the evidence that the couplers "were in proper condition of construction and repair, capable of coupling automatically by impact in the manner required by the Safety Appliance Act, then [they] may find that the defendant has performed its legal duty." This would have been an instruction on the absolute duty of the carrier to conform to the Act. But the defendant so framed its point that the instruction it asked for was the qualified duty of a carrier at common law—that if the jury believe the couplers "were in proper condition of construction and repair, *and that they were in as safe a condition for railroad operation as reasonable care and mechanical skill could make them,* capable of coupling automatically by impact, * * * then [they] may find that the defendant has performed its legal duty."

[3] We think this qualifying phrase vitiated the whole point because the Safety Appliance Act imposes an absolute duty upon the carrier to keep its couplers in a condition of construction and repair to meet the safety requirements of its provisions. Having first met the statutory requirement by properly equipping the cars, the carrier cannot escape its duty by later making an effort of reasonable care and mechanical skill to maintain them at that standard. The Congress imposed the duty initially and continuously, it being construed by the courts as "an absolute and unqualified duty to *maintain* the appliance in secure condition"—"an absolute duty to provide and *keep* proper couplers *at all times.*" St. L., I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281, 294, 295, 28 Sup. Ct. 616, 52 L. Ed. 1061; C. B. & Q. R. R. Co. v. United States, 220 U. S. 559, 575, 576, 31 Sup. Ct. 612, 55 L. Ed. 582; United States v. A., T. & S. F. Ry. Co., 163 Fed. 517, 90 C. C. A. 327; Delk v. St. L. & S. F. R. R. Co., 220 U. S. 580, 586, 587, 31 Sup. Ct. 617, 55 L. Ed. 590; Texas & Pacific Ry. Co. v. Rigsby, 241 U. S. 33, 43, 36 Sup. Ct. 482, 60 L. Ed. 874.

Obviously, the duty of the carrier "is not that of exercising reasonable care in maintaining prescribed safety appliances in operative condition." Its duty is no longer the qualified duty of the rule of common

law. It is an absolute duty prescribed by the statute. It does not stop with the installation of safety appliances; it requires that they shall be kept safe. As the point in question contained a qualification which nullified the whole instruction, the trial court committed no error in refusing to charge it.

Therefore, we are of opinion that the judgment below must be affirmed.