# CASES

## ARGUED AND DETERMINED

## IN THE

## SUPREME COURT OF MINNESOTA

---

ERNEST J. GONEAU v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

December 15, 1922.

No. 23,004.

**Federal Safety Appliance Act—repair to coupler of broken interstate train.**
1. The protection of the Federal Safety Appliance Act extends to a brakeman injured while engaged in repairing a defective coupler, which has caused an interstate train to break apart, the repair being made on the road in order that the train may be coupled together again and proceed on its way.

**Fall from bridge where break occurred within the act.**
2. A recovery by a brakeman so engaged, who was injured by falling from a bridge upon which the break in the train occurred, cannot be defeated on the ground that there was no causal relation between the failure to comply with the statute and the ensuing injury, or on the ground that such an accident was so improbable that it could not reasonably be foreseen.

**Rules of law as to proximate cause not changed by the act.**
3. To sustain a recovery on the sole ground that a railway company has violated the Safety Appliance Act, there must be a casual relation between the fact of delinquency and the fact of injury. The act has not changed the rules of law as to proximate cause, or broken down all distinctions between the occasion and the cause of the injury.

[1]Reported in 191 N. W. 279.

**Fall from bridge after coupling had been made not within the act.**

4. If plaintiff fell from the bridge after the train had been coupled, and not while he was attempting to repair the defectitve coupler or pull the carrier iron into place, his injury was not proximately caused by defendant's nonobservance of the requirements of the Safety Appliance Act, and the jury should have been instructed accordingly, as requested by defendant.

**New trial because of refusal to give instruction not covered by general charge.**

5. Rule applied that the refusal to give a requested instruction correctly stating the law applicable to the issues, but not covered by the general charge, is ordinarily a ground for a new trial.

Action in the district court for Beltrami county to recover $40,-000 for injuries received while in the employ of defendant as freight brakeman. Defendant's demurrer to the complaint on the ground that the facts stated did not constitute a cause of action was overruled. The case was tried before Stanton, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony its motion for a directed verdict, and a jury which returned a verdict for $15,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*Marshall A. Spooner* and *John E. Palmer*, for appellant.

*Samuel A. Anderson*, for respondent.

LEES, C.

Action for damages for injuries sustained by plaintiff in the course of his employment as rear brakeman on a freight train operated by defendant in interstate commerce. There was a verdict for $15,000, and defendant has appealed from an order denying its blended motion for judgment or a new trial.

The complaint charged that the drawbar on one of the cars in the train was defective and the car was being used in violation of the Federal Safety Appliance Act; that because of the defect the coupling parted and the train broke in two; that it was plaintiff's duty to couple the cars again and, while endeavoring to readjust

the carrier iron under the drawbar so the coupling could be made, he lost his balance and fell from a bridge over the St. Croix river, upon which the car was standing, and was severely injured.

The accident happened on October 27, 1920, while the train was on its way to Superior, Wisconsin, and at a short distance from a station called Gordon. When the train broke in two, plaintiff, in the performance of his duties, went from the caboose to the bridge to ascertain what had happened. It was after dark and snow was falling. He found one of the carrier irons on a Lehigh Valley car out of place. The iron was designed to hold up the drawbar and was bolted to the frame-work of the car. The burr on one of the bolts had come off and the iron had broken loose and worked under the shank of the drawbar, allowing it to sag. As a result the car was no longer coupled to the one behind it. At this point a conflict in the testimony appears.

Plaintiff testified that he got the carrier iron back in position and blocked up the drawbar. Then, in response to his signal, the forward section of the train was backed until the coupling was made automatically. He connected the air hose and gave a back-up signal, intending to have the train run back to Gordon to permit a passenger train to go by. The train moved back about 20 feet, parted again in the same place, and came to a stop, with the Lehigh Valley car still on the bridge and separated by about 4 feet from the car behind it. Thereupon he descended from the car from which he had given the signals, placed his left knee under the drawbar to raise it and attempted to pull the carrier iron back into place. It stuck and he braced himself and gave a harder pull, the iron came around suddenly and he lost his balance. In endeavoring to regain it, he fell over the edge of the bridge and was injured.

The other members of the train crew tell a different story. If plaintiff's version was correct, the cars were not coupled when he fell, and he gave all the signals from the top of one of the cars. But the conductor testified that when he came forward after the accident happened, he walked on top of the cars which stood on the bridge, and that they were together. The head brakeman testified that he started to go back after the train stopped the first time;

that before he got to the bridge he got a number of lantern signals from plaintiff, all given from the ground; that he relayed the signals to the engineer, who moved the train in response to them; that the last signal was a stop signal; that when the train stopped plaintiff went between the cars with his lantern and came out a moment later, and then the light disappeared near the edge of the bridge. The witness went back over the cars to see what had happened. He testified positively that there was no break in the train and that the coupling in question had been made and the air hose connected. He also testified that when he asked plaintiff how he had fallen, he replied: "I stepped off." The engineer testified that when he asked a similar question, the plaintiff answered: "I slipped and fell."

The court charged that plaintiff was entitled to a verdict if there was a violation of the Safety Appliance Act and such violation caused the accident and injuries, in whole or in part, or contributed to the same; also that if plaintiff, in the performace of his duties, necessarily went in between the cars to repair the coupling, and, while engaged in that work, stepped or fell from the bridge and was thereby injured, the defendant was liable.

The court refused to give defendant's requested instructions as follows:

"If you find from the evidence that the plaintiff fell from the bridge when the train was coupled together and not in motion, then your verdict must be for the defendant."

"If you find from the evidence that the injuries of which plaintiff complains were occasioned in any other manner than by the slipping of the carrier iron when he was pulling upon the same, your verdict must be for the defendant."

1. Defendant insists that its motion for judgment should have been granted because the automatic coupler provisions of the Federal Safety Appliance Act apply only where a car is moved for the purpose of coupling or uncoupling it, and that they do not apply if the injury results from an attempt to repair a defective coupler on a motionless car. We do not stop to inquire whether this is a cor-

rect interpretation of the act. The conditions were such that a coupling could not be made automatically by impact. If plaintiff was attempting to bring the drawbar back to its proper position so the coupling could be made, we think the protection of the act extended to him while he was so engaged. Louisville & N. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. ed. 931, followed in Clapper v. Dickinson, 137 Minn. 415, 163 N. W. 752.

2. Assuming that the accident happened in the manner described by plaintiff, can it be said that the violation of the act was the proximate cause of his injuries? We think the question requires an affirmative answer. It matters little whether he was attempting to make the coupling or right the position of the drawbar so the coupling could be made automatically by impact. In either case, the chain of events extended uninterruptedly from the defective appliance to the injury, and there was the direct causal relation which the law requires. Erie R. Co. v. Russell, 183 Fed. 722, 106 C. C. A. 160; S. C. 220 U. S. 607, 31 Sup. Ct. 722, 55 L. ed. 607; Louisville & N. R. Co. v. Layton, supra; Pounds v. Chicago G. W. R. Co. 114 Minn. 312, 131 N. W. 329; Burho v. Minneapolis & St. L. R. Co. 121 Minn. 326, 141 N. W. 300. Neither can it be said that such an accident as this was so improbable that it could not reasonably be foreseen. There are bridges on all railroads and a defective coupler may cause a train to break in two anywhere and at any time. The facts bring the case within the rule as to foreseeable consequences. See Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640; Foss v. Chicago, B. & Q. Ry. Co. 151 Minn. 506, 187 N. W. 609. If plaintiff's testimony is true, and it was for the jury to determine whether it was, there was no error in the denial of defendant's motion for judgment notwithstanding the verdict.

3. We are of the opinion that the motion for a new trial should have been granted. The testimony of defendant's witnesses raised an issue of fact as to what plaintiff was actually doing when he fell off the bridge. It was incumbent upon him to show that the violation of the Safety Appliance Act was the proximate cause of his injuries, for, as stated in Lang v. N. Y. Cent. R. Co. 255 U. S. 455,

41 Sup. Ct. 381, 65 L. ed. 729, "necessarily there must be a causal relation between the fact of delinquency and the fact of injury." See also Philadelphia & R. Ry. Co. v. Eisenhart, 280 Fed. 271. If plaintiff made the coupling and then stepped to the side of the bridge either to give a signal, or for a purpose having no relation to the making of the coupling, defendant's delinquency was not a proximate cause of the injury. Plaintiff's counsel asserts that plaintiff would not have gone upon the bridge if there had not been a defective coupler; that if he had not gone there he would not have been hurt, and hence defendant's delinquency was the proximate cause of the injury. In support of this contention he cites Erie R. Co. v. Russell, supra; Louisville & N. R. Co. v. Layton, supra; Spokane & I. E. Co. v. Campbell, 217 Fed. 518, 133 C. C. A. 370; Sprague v. Wisconsin Cent. Ry. Co. 104 Minn. 58, 116 N. W. 104, and other cases less directly in point.

From the decisions of the Supreme Court of the United States, well summarized in Philadelphia & R. Ry. Co. v. Eisenhart, supra, it plainly appears that liability does not invariably follow upon a showing that the injury would not have resulted if the requirements of the Safety Appliance Act had been obeyed. True, the use of a car not equipped with couplers as prescribed is unlawful, and the duty to comply with the act is absolute and continuous. But the act does not change the rules of law as to proximate cause. The violation of the act, if the testimony of defendant's witnesses is true, was simply one of a series of antecedent events without which the accident would not have happened, and was not in a legal sense the proximate cause of the injury. See St. Louis &c. Ry. Co. v. Commercial Ins. Co. 139 U. S. 223, 11 Sup. Ct. 554, 35 L. ed. 154.

To adopt the doctrine advocated by plaintiff's counsel would lead to surprising results. As applied to the facts here, it would make the defendant liable if plaintiff had slipped and fallen while walking alongside the train in going from or returning to the caboose. Defendant would become an insurer of plaintiff's safety from the moment the train broke in two until after it had been reunited and was on its way again. In St. Louis Ry. Co. v. McWhirter, 229 U. S.

265, 33 Sup. Ct. 858, 57 L. ed. 1179, a similar argument was advanced to sustain a recovery on the theory that a violation of the Hours of Service Act created an unconditional liability for all accidents happening during the period beyond the statutory time, irrespective of proof showing a connection between the accident and the working overtime, but the court distinctly refused to adopt that view.

The distinction between the occasion and the cause of an injury is clearly and concisely stated in Denson v. McDonald, 144 Minn. 252, 175 N. W. 108. There, the violation of an ordinance was involved, and the necessity of showing a causal connection between its violation and the accident was plainly declared, and in Childs v. Standard Oil Co. 149 Minn. 166, 182 N. W. 1000, it was held that the fact that plaintiff would have suffered no damage but for defendant's tortious act did not necessitate the conclusion that such act was the proximate cause of the damage; and, in Schaar v. Conforth, 128 Minn. 460, 151 N. W. 275, that the injury must be the direct result of the violation of the statute.

It seems clear that defendant was entitled to have its requested instructions given. They fairly stated the law applicable to such a situation as was described by the members of the train crew other than plaintiff himself. A careful reading of the whole charge has satisfied us that it does not cover the point. The court merely told the jury that there could be no recovery if any act of the plaintiff was the sole cause of his injury and the unlawful conduct of defendant was no part of the causation. They were also told that if they found that, in the performance of his duties, plaintiff necessarily went between the cars and there engaged in the work of repairing the coupler, and, while so engaged, slipped or fell from the bridge, their verdict must be in his favor. It may be said that the jury were bound to infer from this that, if plaintiff was not repairing the coupler when he fell, he could not recover. But, in passing upon this vital issue, the jury should not have been left to draw inferences. An explicit instruction on the subject should have been given. We apply the well-settled rule that it is the duty of the court to give a requested instruction which correctly states the law

applicable to the issues in the case unless the general charge contains the substance of the instruction requested, and that a refusal to give it is ordinarily a ground for a new trial. 3 Dunnell, Minn. Dig. § 9774.

Order reversed and a new trial granted.