## ALDEN W. BOHM v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

November 21, 1924.

No. 24,178.

**Safety Appliance Act—defective brake not proximate cause of injury.**
    Where a brakeman, on his way to release a defective brake, stepped
    off a ladder at the side of the car in the night time without lowering
    his lantern to see what was beneath him and fell through a bridge,
    the accident is not proximately attributable to the defect in the
    brake within the meaning of the Federal Safety Appliance Act.

Action in the district court for Hennepin county to recover
$30,000. The case was tried before Leary, J., and a jury which
returned a verdict for $16,500. Defendant's motion for judgment
notwithstanding the verdict was granted. From the judgment,
plaintiff appealed. Affirmed.

*George C. Stiles* and *F. M. Miner*, for appellant.

*F. W. Root, C. O. Newcomb* and *A. C. Erdall*, for respondent.

TAYLOR, C.

Action for personal injuries. The plaintiff was the rear brake-
man on a freight train of the defendant running from Mason City,
Iowa, to Minneapolis in this state. The train consisted of 35 cars
with a caboose at the rear, all equipped with air brakes operated
from the engine by the engineer. Each car was provided with a
rod extending from the air piston underneath the car to the side
of the car near the center, by means of which air could be let out
and the brakes released. When the control lever operated by the
engineer failed to release the brakes on a car, as occasionally hap-
pened, they were released by means of this rod. The trainmen
called this "bleeding" the car or "bleeding" the brakes. When the
train left Austin and while it was moving slowly, plaintiff heard

[1]Reported in 200 N. W. 804.

the brakes "squealing," as he termed it, on the second car in front of the caboose and saw that they were sticking. He went to the side of the car and released them by means of the rod above mentioned. About two miles from Austin the train stopped at a railroad crossing. Plaintiff and the conductor were in the caboose. When the train started again they heard brakes "squealing" and the conductor directed plaintiff to "bleed" those brakes. It was in the night, and dark and cloudy. Plaintiff hung his lantern on his arm, climbed up the ladder to the top of the first car, passed over that to the top of the second car, and found that the noise came from the brakes of the second car. He examined the hand brake and found that the trouble was not caused by that. He then started down the ladder at the side of the front end of the car for the purpose of "bleeding" the brake. As he descended, he looked down and thought he saw a dark bank which he took to be the ground. The train was moving very slowly. Without lowering his lantern to see what was beneath him, he stepped off the ladder, fell through a bridge over which the car was then passing, and sustained serious injuries.

The action was brought under the Federal Safety Appliance Act. The trial court rendered judgment for the defendant notwithstanding a verdict for the plaintiff. The sole question presented is whether the defective brake was the proximate cause of the injury within the purview of the Federal act.

The courts have frequently been called upon to determine similar questions, and the line which separates the class of cases in which the accident is proximately attributable to the defect in the appliance from the class of cases in which it is not proximately attributable thereto has been pointed out quite clearly.

In Chicago, R. I. & P. Ry. Co. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840, 57 L. ed. 1204, the pin lifter failed to work and a switchman, while attempting to uncouple the cars by hand, slipped and his foot was caught in an unblocked frog. He was held to be within the protection of the act.

In Louisville & N. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. ed. 931, an attempt was made to couple onto a string of 5 cars.

The automatic coupler failed to work and the impact drove the cars against a standing train with such force that a brakeman was thrown from the top of them. The defective coupler was held to be a proximate cause of the accident.

In M. & St. L. Ry. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. ed. 995, the train separated because a coupler opened. This caused the setting of the brakes and a sudden jerk which threw a brakeman off the train and under the wheels. The defective coupler was again held, in effect, to be a proximate cause of the accident.

In Davis v. Wolfe, 263 U. S. 239, 44 Sup. Ct. 64, 68 L. ed. 284, the conductor was standing on the sill step at the side of a box car holding on a grab iron which was loose and defective. An unexpected jerk of the car and a movement of the loose grab iron caused him to fall. The verdict was sustained. The court reviewed the prior cases, and pointed out the distinction between those in which the accident was proximately attributable to the use of a defective appliance and those in which it was not.

In Philadelphia & R. Ry. Co. v. Eisenhart (C. C. A.) 280 F. 271, two cars cut from a train were "kicked" to a siding. The conductor was riding on them for the purpose of stopping them at the proper place on the siding. Owing to a defective coupler the train parted and another string of cars followed down the siding and collided with the car on which the conductor was riding throwing him to the ground. The court reviewed the cases and held that the failure to comply with the safety appliance law was the proximate cause of the accident.

In Burho v. M. & St. L. R. Co. 121 Minn. 326, 141 N. W. 300, the coupler was defective, and a brakeman, attempting to open the knuckle by hand while the train was moving, stumbled and fell. He was held to be within the protection of the act.

In Clapper v. Dickinson, 137 Minn. 415, 163 N. W. 752, a car loaded with pig iron was placed on a side track and held in position by a block of wood under the wheels as the track was on a grade. A box car was "kicked" onto the track to couple to the pig-iron car. The coupling did not make, but the impact moved the pig-iron car so that the block under the wheels fell out, a fact not known

to the switchman. The box car started down the grade, but was brought to a stop and the switchman placed a block of wood under the wheels of this car. As he stepped away the pig-iron car struck this car with such force it ran over him. He was held to be within the rule applied in the Layton case, supra.

In Schendel v. C. G. W. R. Co. 159 Minn. 166, 198 N. W. 450, a car having a defective coupler was attached to the train by a chain. It was pulled onto a side track, and while the brakeman and conductor were trying to unfasten the chain the brakeman was crushed by a sudden movement of the train. It was held that the defective coupler had a causal relation to the accident.

In St. Louis & S. F. Ry. Co. v. Conarty, 238 U. S. 243, 35 Sup. Ct. 785, 59 L. ed. 1291, a loaded freight car from which the coupler and drawbar had been pulled out stood on a side track. A switch engine ran into it in the night, and in the absence of the coupler and drawbar came directly in contact with the end of the car crushing a switchman who was riding on the footboard. It was held that the absence of the coupling apparatus was not the proximate cause of the collision and did not render the company liable under the act, although the injury would not have resulted if it had been in place.

In Lang v. New York Cent. R. Co. 255 U. S. 455, 41 Sup. Ct. 381, 65 L. ed. 729, a string of cars "kicked" onto a sidetrack was not stopped in time and collided with a standing car having no drawbar or bumper. A brakeman riding on the end of the string of cars was caught between them and the standing car. It was held that, although the drawbar and bumper would have saved the brakeman from injury if they had been in place, their absence was not the cause of the collision, and that there "must be a causal relation between the fact of delinquency and the fact of injury." The Layton case was considered and distinguished.

In Phillips v. Pennsylvania R. Co. (C. C. A.) 283 F. 381, the fireman climbed along the top of the boiler and repaired the automatic bell ringer which was out of order. While he was passing by the steam dome on his way back to the cab, the safety valve popped, causing him to fall. The defect in the bell ringer was held to be merely the occasion and not the proximate cause of the accident.

In McCalmont v. Pennsylvania R. Co. (C. C. A.) 283 F. 736, a car having a defective coupler was placed on a track set apart for bad order cars and attached to a string of such cars by a chain. They were not intended to be moved until taken to the repair shop some time later. An inspector saw the chain and thinking it too slack went between the cars to adjust it. A car was "kicked" against the string and he was injured. It was held that the defect in the coupler was not the proximate cause of the injury as it had no part in causing the car to be "kicked" against the string.

In Devine v. Chicago & C. R. R. Co. 259 Ill. 449, 102 N. E. 803, a switchman riding on the running board of the engine uncoupled some cars which were to be "kicked" down the track. As soon as uncoupled, the engine was reversed resulting in derailing it and injuring the switchman. The coupler did not comply with the requirements of the act, but it was held that the accident resulted from an independent cause not connected with the defect.

In Fort Worth & D. C. Ry. v. Smithers (Tex. Civ. App.) 249 S. W. 286, a roundhouse hostler entered the cab of an engine and dumped the ashes by means of a rod provided for that purpose, but was unable to close the ash pan by means of the rod. In descending from the cab to close it, he slipped on a step covered with oil and fell into the ash pit. It was held that the defect, if any, in the ash pan was not the proximate cause of his fall.

In Goneau v. M. St. P. & S. S. M. Ry. Co. 154 Minn. 1, 191 N. W. 279, the train parted because a carrier iron supporting a drawbar was out of place permitting the drawbar to sag. A brakeman who went to the point of separation to recouple the cars fell from a bridge on which the train was then standing. He claimed that he fell while adjusting the carrier iron. The testimony of other members of the train crew was to the effect that the brakeman had completed the coupling and had stepped to the side of the train and given signals to the engineer to move it before he fell. The court reviewed numerous cases and held that under the rule established therein the defective coupling would be the proximate cause of the accident if the brakeman fell while engaged in adjusting the coupling as he claimed, but would not be the proximate cause of the

accident if he fell after the coupling had been made and after he had stepped to the side to give a signal, or for a purpose having no relation to the making of the coupling. In referring to the contention of the plaintiff in that case the court said:

"To adopt the doctrine advocated by plaintiff's counsel would lead to surprising results. As applied to the facts here, it would make the defendant liable if plaintiff had slipped and fallen while walking alongside the train in going from or returning to the caboose. Defendant would become an insurer of plaintiff's safety from the moment the train broke in two until after it had been reunited and was on its way again."

In Davis v. Wolfe, 263 U. S. 239, supra, the court, after considering prior cases, said:

"The rule clearly deducible from these four cases is that, on the one hand, an employe cannot recover under the Safety Appliance Act if the failure to comply with its requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; and, on the other hand, he can recover if the failure to comply with the requirements of the act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty."

Applying to the present case the test announced and applied in the cases cited makes it clear that the defect in the brake was not the proximate cause of the accident which resulted in plaintiff's injury. He had not entered upon the work of remedying the defect. While the defect furnished the occasion for him to go along the top of the cars, it did not produce the condition, nor bring into operation a force, which caused him to fall. It caused no movement of the train, no jar or jerk. If plaintiff had alighted in the same manner at the same place for the purpose of boarding the caboose as it passed, or for any other purpose, the result would have been the same. The condition of the brake has no direct causal connection with the fact that he "stepped out into space," as he termed it, instead of on the ground. As pointed out in the above cases the

statute does not make the company an insurer of the safety of its employes against all accidents, but only against those resulting proximately from a failure to comply with its requirements. Where an employe, while on his way to adjust a defective appliance, or while returning from making such an adjustment, meets with an accident from another independent cause, the safety appliance act has no application.

It follows that the learned trial court reached the correct conclusion, and that the judgment must be and is affirmed.