ALBERT H. SPRAGUE v. WISCONSIN CENTRAL RAILWAY COMPANY.[1]

April 16, 1908.

Nos. 15,493—(145).[2]

**Evidence—Negligence.**

In an action to recover damages for personal injuries, it is *held* that the evidence was sufficient to sustain the verdict to the effect that the defendant was negligent and that the plaintiff was not guilty of contributory negligence.

**Contributory Negligence.**

When a coupler refuses to work, it is not contributory negligence per se for a brakeman to go between the moving cars for the purpose of ascertaining the trouble.

**Violation of Disregarded Rule.**

The violation by a brakeman of a rule of the railway company which has been customarily disregarded under circumstances from which notice to the company may be inferred is not per se contributory negligence. Turrittin v. Chicago, St. P., M. & O. Ry. Co., 95 Minn. 408.

**Competency of Witness.**

The competency of a witness to testify to a particular fact is a preliminary question for the trial judge, and rests largely in his discretion.

Action in the district court for Ramsey county to recover $50,000 damages for personal injuries. The case was tried before Kelly, J., and a jury which returned a verdict in favor of plaintiff for $40,000. The court denied defendant's motion for judgment notwithstanding the verdict but granted a new trial unless plaintiff would consent to a reduction of the verdict to $30,000, in which event a new trial was to be denied. Defendant appealed. Affirmed.

*Thomas H. Gill, Walter D. Corrigan,* and *Walter L. Chapin,* for appellant.

*Humphrey Barton* and *John H. Kay,* for respondent.

ELLIOTT, J.

In an action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant railway company, plain-

[1] Reported in 116 N. W. 104.　　　　[2] October, 1907, term calendar.

tiff recovered a verdict for $40,000. Defendant moved for judgment notwithstanding the verdict or for a new trial. The trial court denied the motion for judgment, but granted the motion for a new trial unless the plaintiff should file a stipulation agreeing that the verdict be reduced to $30,000. This stipulation was duly filed, and the new trial denied. From the order the defendant appealed to this court, where it contends that the verdict was not justified by the evidence, that the plaintiff was guilty of contributory negligence, that the verdict is excessive and shows passion and prejudice, and that the trial court erred in giving and refusing to give certain instructions, in receiving certain testimony over the objection of the defendant, and in denying a new trial on the ground of newly-discovered evidence.

The amount of the verdict returned in this case and its importance to all parties has required a very careful examination of the record and of the questions of law involved, but we are clearly of the opinion that the order of the trial court must be affirmed. It is impossible to distinguish the case from that of Turrittin v. Chicago, St. P., M. & O. Ry. Co., 95 Minn. 408, 104 N. W. 225, in which, upon very similar facts, the questions of law here involved were settled.

There is little, if any, dispute as to the extent of the injury and the way in which it was received. Sprague, the respondent, was a brakeman in the employ of the Wisconsin Central Railway Company. On June 14, 1906, while engaged in switching cars at Gladstone, in this state, he stepped in front of an approaching car, was thrown down, and so injured that he lost both legs. The car was equipped with an automatic coupler of the character required by the federal statute. This coupler was supposed to be operated by a lever on the outside of the car, by means of which the block or pin which held the knuckle of the coupler was closed. The respondent, in the course of the switching operations, signaled the engineer to back his train down upon a car which was standing on the track, and which was to be attached to the train. The conductor was at the stationary car waiting to do the actual coupling when the cars came together. Thinking that the knuckles of the coupler were closed, Sprague ran along the outside of the track until he reached the approaching train, when he took hold of the lever, which was attached to the end of the car at its side, and attempted to open the knuckle. The lever did not work, and Sprague then stepped

upon the track in front of the car in order to find out what was wrong. While in that position, he shook with his hand some links of a small chain for the purpose of loosening them, intending then to go outside the rails and again pull the lever. In attempting to step aside he slipped, fell, and was run over by the car. In the complaint it was alleged that the roadbed at the point where Sprague fell was defective; but, although there is some confusion, it is apparent that this ground of negligence was withdrawn from the jury by the court, as they were specifically instructed that there could be no recovery by the plaintiff unless it was proven that the coupler was defective. Upon this issue only the case went to the jury. The claim is that the lever on the outside of the car, by means of which the coupler was operated, was defective, and that it would not raise the block or pin which held the knuckle or coupler closed.

1. We are unable to see any force in the contention of the appellant that the efficient cause of the accident was the defect in the roadbed or the going by Sprague in front of the moving car, and that the defective coupler was not, therefore, the proximate cause of the injury. The defect in the coupler was the occasion for Sprague being in the dangerous position. Campbell v. City of Stillwater, 32 Minn. 308, 20 N. W. 320, 50 Am. 567; Turrittin v. Chicago, St. P., M. & O. Ry. Co., supra.

2. There was evidence which required the submission to the jury of the questions whether the coupler was defective and whether such defective condition was known, or ought to have been known, to the defendant. The direct evidence of Sprague justified the jury in coming to the conclusion that the coupler was defective. He testified that, when the lever refused to work, he supposed that it was because a link of the chain had become crossed in the drawbar, and that it could be remedied by merely shaking it loose. After going in front of the car for that purpose, he found that the difficulty was due to the fact that the hole in which the chain worked had become battered, thus holding the chain locked and preventing it from working. His testimony as to this condition is direct and positive. It was met by the testimony of persons whose duty it was to inspect the cars and couplers, and evidence that the same car was uncoupled before the accident and coupled to another car soon after the accident. The thoroughness of the inspection was a matter for the jury to determine, and there was

evidence which tended to show that the prior and subsequent coupling of the car was done by means of other levers, and that the lever on the car in question was not used. Assuming that there was evidence to justify the jury in concluding that the coupler was out of repair, it was also necessary to show that the defendant had knowledge, actual or constructive, of such condition. The inspection was made at Minneapolis a few hours before the accident. Nothing had happened in the meantime to cause the battered condition of the drawbar. If that defect, as described by Sprague, existed at the time of the accident, it justifies the inference that it existed when the inspection was made, and that it ought to have been discovered and remedied. At least, there was evidence which required the question of the negligence of the defendant to be submitted to the jury.

3. The most serious question in the case is that of the alleged contributory negligence of the respondent. The appellant contends, and cites many authorities to sustain the contention, that Sprague was guilty of negligence in stepping upon the track in front of the moving car, in violation of a rule of the company which forbade employees to go between cars for the purpose of making couplings. Without reference to the fact that the rule in question was made and promulgated prior to the time of the adoption of automatic couplers, and by its terms was intended to apply to different conditions, we are of opinion that, under the evidence tending to show a custom to disregard the rule, it was not contributory negligence, as a matter of law, on the part of the respondent, to go upon the track in front of the train for the purpose of examining the coupling apparatus. All these questions were very fully considered in Turrittin v. Chicago, St. P., M. & O. Ry. Co., supra, and anything which might now be said would be mere repetition. The appellant attempts, unsuccessfully we think, to distinguish this case from the Turrittin case. The difference between the experience of the men is not sufficient to be material. If the claim that there is no evidence in the present case to show a custom to disregard the rule was correct, a very different case would be presented; but there is evidence that the rule was customarily disregarded under circumstances from which notice to the company might be inferred. This evidence was sufficient to carry the question to the jury and to sustain its conclusion. The

trial court, therefore, properly refused to order judgment in favor of the defendant notwithstanding the verdict.

4. The accident occurred on June 14, 1906, and the witness Anderson was permitted to testify as to the condition of the roadbed at the place of the accident on November 1, thereafter. The competency of this evidence depended upon whether it had been sufficiently shown that the conditions were then the same as on June 14. The witness was a sectionman, and, with the exception of two weeks, had worked on the track during all the time in question. He had been over the track, at the place where the accident occurred, every day. During the two weeks when he was not at work he was in Minneapolis for two days, and the rest of the time he lived at a boarding house about thirty or forty rods from the Gladstone station, and within sight of the place of the accident. During that time he was occasionally about the yards, and testified that he saw no work done there during the two weeks, except the clearing up of a wreck about thirty feet east of the switch. He observed no evidence of fresh work within ten or twelve feet east of the switch. The respondent claimed that the place where he stepped in the hole was nine or ten feet east of the switch. Anderson testified that he believed that there had been no change in the roadbed, and was then allowed to describe the conditions as they existed on November 1. The sufficiency of the foundation necessary to make evidence competent is for the trial court, and its conclusion will be interfered with only when its discretion has been abused. Cleveland v. Rowe, 99 Minn. 444, 109 N. W. 817; Meyers v. McAllister, 94 Minn. 510, 103 N. W. 564, and cases there cited; 4 Wigmore, Ev. § 2550, and note 6.

5. The application for a new trial on the ground of newly-discovered evidence was also addressed to the sound discretion of the trial court, and, within the rule stated in Bunker v. United Order of Foresters, 97 Minn. 361, 107 N. W. 392, we find nothing in this record which leads us to believe that the trial court abused its discretion. The evidence related to the condition of the coupler on the car in question. It was largely cumulative in character, and it was for the trial court to determine whether a sufficient excuse had been shown for the failure to produce the evidence at the trial.

The verdict, even as reduced by the trial court, is large; but, in view of the nature of the injuries, we cannot say that it is excessive, or the

result of passion and prejudice on the part of the jury. A cursory examination of the cases will disclose many instances in which verdicts of similar amounts have been approved by appellate courts.

We do not find it necessary to discuss in detail the other questions raised by the numerous assignments of error. They have all been carefully considered, and none are of sufficient importance to justify a reversal.

The order of the trial court is therefore affirmed.