# H. W. OTOS v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 29, 1915.

Nos. 18,955—(182).

**Interstate commerce.**

1. A car in process of transportation from one state to another is in transit and is being used in interstate commerce while being switched at an intermediate yard with other interstate cars, although there may be a purpose to switch the defective car to a repair track for repair of a defective coupler before it leaves the yard. The Federal Safety Appliance Act and the Employer's Liability Act apply to such a car.

**Injury to brakeman — proximate cause.**

2. The act of a switchman in stepping between moving cars to make an uncoupling because of a defective coupler is not the sole proximate cause of an injury received by him while so doing. The violation of the statute is a contributing cause of the injury.

**Damages not excessive.**

3. The damages as reduced by the trial court are not excessive. Defendant was not entitled to a reduction of the amount of plaintiff's damages because of a prospect that a surgical operation might relieve part of his injury.

Action in the district court for Yellow Medicine county to recover $80,000 for personal injuries sustained while brakeman in defendant's employ. The case was tried before Flaherty, J., and a jury which returned a verdict in favor of plaintiff for $35,000. Defendant's motion for judgment notwithstanding the verdict was denied, and its motion for a new trial was granted unless plaintiff consented

[1] Reported in 150 N. W. 922.

---

Note.—On the question of the constitutionality, application, and effect of the Federal Employer's Liability Act, see note in 47 L.R.A. (N.S.) 38. And as to the duty and liability of the master under the Federal and State Railway Safety Appliance Acts, see notes in 20 L.R.A. (N.S.) 473 and 41 L.R.A. (N.S.) 49.

The question whether the negligent condition of a place or appliance is the proximate cause of injuries not primarily caused by that condition is considered in a note in 40 L.R.A. (N.S.) 940.

to a reduction of the verdict to $30,000. From the order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*John I. Davis, Tom Davis* and *Ernest A. Michel,* for respondent.

HALLAM, J.

Plaintiff was a switch foreman in defendant's yards at Willmar. On September 11, 1912, a train came into Willmar from the west. It contained, among others, a loaded car from Willow Lake, South Dakota, consigned to Minneapolis. This car was coupled with automatic couplers to a car consigned to Duluth, by way of Superior, Wisconsin. The pin lifter on the Minneapolis car was out of order. At Willmar the Duluth car was to be transferred to another train. There is some evidence that the Minneapolis car was to be switched to the repair track, before it proceeded further, for the purpose of repairing the coupler. There is no evidence that it was ever so transferred. The car was carried to Minneapolis on the following day. Plaintiff and his crew were engaged in cutting up this train and switching the cars to be removed from it to their proper destination. At the time of the accident he had three cars attached to a switch engine; the Duluth car was in the rear and the Minneapolis car in the middle. Plaintiff was about to cut off the Duluth car in order to switch it to the Duluth track. He stood on the side from which the pin lifter was missing. He could not make the uncoupling from that side without going in between the cars. This he did, and in doing so he was run over and sustained severe injuries.

It is conceded that defendant's road at Willmar is a highway of interstate commerce and that the traffic in which this car was engaged when in transit was interstate traffic, and that if it was in transit at this time, then, under the Federal Safety Appliance Acts and Employer's Liability Act, defendant is liable for any injury caused by the defective coupler, and neither contributory negligence nor assumption of risk constitutes any defense. The contention of defendant is that "the condition of the car was such that it had to go to a repair track for repairs;" that "it was necessary that the through

movement of the car be interrupted at Willmar for the purpose of repairs," and that therefore "the defective car had been withdrawn from commerce" and was "not in the course of transit."

We are of the opinion that at the time of plaintiff's injury this defective car was in transit and was being used in interstate commerce. A car in process of transportation from one state to another is usually in transit and engaged in commerce from the time it is started upon its passage until the delivery of its cargo at the place of destination. U. S. v. Colorado & N. W. R. Co. 157 Fed. 321, 85 C. C. A. 27, 15 L.R.A.(N.S.) 167, 13 Ann. Cas. 893. It is not taken out of commerce because in need of repair, nor because of a purpose to repair it, nor because of a design to set it upon a repair track in due course for that purpose. We need not consider what the situation might have been if this car had been set at rest on the repair track. This had not been done. At the time of the accident it was still part of an interstate train. Its cargo had not reached its destination and was not ready for delivery to the consignee. It was attached to and was being moved with another interstate car, from which it was in due course being uncoupled. Clearly the defective car was in transit and was being used in interstate commerce.

The Federal decisions leave no doubt upon this point.

In Delk v. St. Louis & San Francisco R. R. Co. 220 U. S. 580, 31 Sup. Ct. 617, 55 L. ed. 590, a car loaded and being used in moving interstate traffic was found with a defective coupler. The car was marked "in bad order," and a repair piece sent for, but the company kept on moving it about in connection with other cars, and finally ordered the injured employee to couple it to another car. This he tried to do and was injured. It was held that the car in question was being used in interstate traffic.

In Chicago, M. & St. P. Ry. Co. v. United States, 165 Fed. 423, 91 C. C. A. 373, 20 L.R.A.(N.S.) 473, it was said that, if a car is one of the connecting links between the engine and the caboose and a constituent part of a train moving on an interstate mission, the car is engaged in interstate commerce. See also Erie R. Co. v. Russell, 183 Fed. 722, 106 C. C. A. 160; Southern Ry. Co. v. Snyder, 205 Fed. 868, 124 C. C. A. 60.

2. Defendant contends that the proximate cause of plaintiff's injury was not the defective condition of the coupling, but his violation of a rule of the employer forbidding employees going between moving cars. It appears that there was such a rule. There is evidence that in this yard it had, with the knowledge of the yardmaster, been more honored in its breach than in its observance. But, whatever may be said of the propriety of plaintiff's act in going between the cars, it was only one of the concurring causes of plaintiff's injury. The violation of the statute was one cause of his injury. Turrittin v. Chicago, St. P. M. & O. Ry. Co. 95 Minn. 408, 104 N. W. 225; Sprague v. Wisconsin Cent. Ry. Co. 104 Minn. 58, 116 N. W. 104. This is all that is necessary to create liability. The statute which abolishes contributory negligence "would be nullified by calling plaintiff's act the proximate cause, and then defeating him, when he could not be defeated by calling his act contributory negligence. * * * It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act." Grand Trunk Western Ry. Co. v. Lindsay, 233 U. S. 42, 47, 34 Sup. Ct. 581, 582, 58 L. ed. 838, Ann. Cas. 1914C, 168, quoting 201 Fed. 844, 120 C. C. A. 166.

3. The jury assessed plaintiff's damages at $35,000. The trial court reduced the amount to $30,000. Plaintiff was 26 years old at the time of his injury and was earning from $105 to $115, a month. His left leg was amputated within two inches of the hip joint, so close to the body that the use of an artificial leg is impossible. There was not sufficient skin to cover the stump, and scar tissue was formed. Four different operations have been performed for the purpose of engrafting skin upon the stump. Several more were performed to remove cinders or to open abscesses that had formed. Two nerve tumors have formed upon the stump, caused by the ends of the nerves being imbedded in the scar tissue. These are intensely painful to the slightest touch, and they cause intense spasms of pain on pressure or movement. From some cause, perhaps because of these nerve tumors, plaintiff suffers intense pain in the small of the back so that he can neither sit up nor use a crutch. There is evidence

that these conditions are permanent, in fact it is conceded that they can only be relieved by further surgical operation.

Defendant contends there is a practical way of improving plaintiff's condition. It offered evidence that the nerve tumors may be removed by a surgical operation and that their removal will remove the cause of pain in the stump and in the back, and to all intents and purposes restore plaintiff's general health. Defendant claims it is the duty of plaintiff to submit to such operation, or, if he chooses not to do so, that the injuries which may be remedied by an operation should not be considered in measuring his damages. This suggested operation is described as follows: "Cut down on the stump and resect these diseased nerve endings, pulling them out and cutting off higher up, and then by stitching the end of the cut nerve together, pulling it over, to prevent a recurrence of a similar condition, and sewing the end up so as to leave no raw surface exposed." It is conceded that after such an operation there is liability of recurrence of these nerve tumors, and that in some cases as many as three operations have been required.

We are of the opinion that plaintiff was entitled to an assessment of damages based on the condition he was in at the time of the trial. A person who sustains damage at the hands of another, whether through breach of contract or through tort, is required to take all reasonable measures to reduce his damage, but we cannot carry this doctrine to the extent of holding that this plaintiff, who had already submitted to an amputation which a "great proportion of men * * * do not survive," and a number of lesser operations, is under any obligation to submit to another surgical operation of the character described in pursuit of an uncertain prospect of lessening his injury and his damage. Maroney v. Minneapolis & St. L. R. Co. 123 Minn. 480, 144 N. W. 149, 49 L.R.A.(N.S.) 756, and cases cited.

There is some evidence that plaintiff's injury has caused permanent impotence, due to the interruption of the course of certain nerves. The testimony on this subject is sharply in conflict. Injury of this sort is very easy to feign or exaggerate and very hard to disprove. Temporary loss of sexual power is the usual concomitant of almost

every severe injury or illness, and cannot usually be considered as a distinct element of damage. Bucher v. Wisconsin Cent. Ry. Co. 139 Wis. 597, 120 N. W. 518. At the same time, where there is tangible proof that by reason of direct injury to the generative organs or the nerves that prompt their action, and resulting impotence, there is no good reason why this element may not be considered. Where the proof rests upon opinion evidence, it should be closely scrutinized, but it cannot in all cases be rejected entirely. In this case there is evidence of injury to the pudic nerve, and also evidence that every known test indicates present impotence, and there is expert evidence based upon this alleged organic injury that impotence will be permanent. We think the court cannot say as a matter of law that this evidence should have been wholly disregarded. However, it seems to us that this verdict can be sustained without resting largely upon this claim. Aside from this element of damage, the case is in no sense parallel to those involving the mere loss of one leg. In fact many men who have sustained amputation of both legs, as in Sprague v. Wisconsin Cent. Ry. Co. 104 Minn. 58, 116 N. W. 104; Whitehead v. Wisconsin Cent. Ry. Co. 103 Minn. 13, 114 N. W. 254, 467, are in no worse plight than this plaintiff. We are not disposed to further disturb the amount of this verdict.

·Order affirmed.