## PHILLIPS v. PENNSYLVANIA R. CO. *

(Circuit Court of Appeals, Seventh Circuit. May 12, 1922.)

No. 3060.

1. **Master and servant** ⬤⟹129(5)—**Railroad's negligence must be a cause of injury.**

Though Employers' Liability Act, § 1 (Comp. St. § 8657), imposes liability for an injury "resulting in whole or in part" from negligence of a railroad company in failing to maintain its engines or cars in the prescribed condition, it necessarily remains true that the partial negligence must be of the same causal nature as if no other element of negligence was present.

2. **Master and servant** ⬤⟹286(32)—**Evidence held not to make negligence as to fireman on locomotive a jury question.**

Plaintiff, fireman on a locomotive attached to a train and then standing at a water plug, after adjusting the spout, obtained a wrench from the engineer and, taking a piece of wire, went forward over the boiler to repair the automatic bell ringer from which a cotter pin had dropped out. This took him about five minutes, and when stepping over the steam dome on his return the safety valve popped, he lost his balance, and fell and was injured. When he left the cab, the pressure was at 180 pounds, and the valve was adjusted to pop at 205. While he was so forward the engineer left the cab to oil the engine. *Held* that, when he left the cab, plaintiff was at least as well able to judge of the danger as was the engineer, and that in the absence of any evidence that he spoke to the engineer on the subject, or to show the condition of the fire or whether the pressure was rising or falling, a jury would not be authorized to find that the engineer was negligent in leaving the engine and failing to watch the gauge and keep the pressure down.

Evans, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Indiana.

Action at law by Harry O. Phillips against the Pennsylvania Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Walter D. Corrigan, of Milwaukee, Wis., and John H. Kay, of Chicago, Ill., for plaintiff in error.

Owen Pickens, of Indianapolis, Ind., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. At the conclusion of the evidence the jury was instructed to return a verdict for the defendant railroad company, and the resulting judgment is now challenged by this writ of error of the plaintiff Phillips.

Phillips was the fireman and Keelor was the engineer in charge of the locomotive hauling the freight train in interstate commerce. After the train was made up and just before its departure on the trip, the engineer stopped the locomotive at a water plug. It was then observed that the automatic bell ringer was not working. Phillips left his station in the cab; climbed up over the coal and turned the waterspout into the tank of the tender; returning to the cab he asked Keelor for a monkey wrench with which to repair the bell ringer; Keelor handed Phillips the wrench; Phillips took this and a piece of wire with which to replace

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. ——, 43 Sup. Ct. 93, 67 L. Ed. ——.

the missing cotter pin in the attachment of the bell ringer and climbed over the top of the cab and thence along the top of the boiler to the bell ringer at the front end of the locomotive; in thus traveling to the bell ringer he passed over the steam dome of the boiler; while Phillips was repairing the bell ringer, Keelor descended from the cab and proceeded to oil the locomotive; after Phillips had put in the piece of wire in place of the missing cotter pin he started to return to his post in the cab; just as he was stepping over the steam dome the safety valve popped, and Phillips lost his balance and fell to the ground; in the time Phillips started from his post in the cab until the accident happened about five minutes elapsed; Keelor, having finished his oiling, returned to his post in the cab just an instant before the accident happened; Keelor was absent from the cab three or four minutes; when Phillips was about to leave his post in the cab, he turned off the blower, and the steam gauge was then registering 180 pounds; the valve was regulated to lift at a pressure of 205 pounds in accordance with regulations under the Boiler Inspection Act; before and after the accident official inspectors found that the pop valve in fact lifted at the designated pressure; two witnesses for Phillips testified that some time after the accident and again a few days later the pop valve did not lift until a pressure of 215 or 220 pounds was reached.

Counsel for Phillips present three grounds for contending that under the foregoing state of the evidence the railroad company was liable for the damages resulting from Phillips's injuries.

[1] 1. Under the Federal Boiler Inspection Act of February 17, 1911, as amended March 4, 1915 (Comp. St. 8630–8639–D) and the rules of the Interstate Commerce Commission made thereunder, the defective condition of the bell ringer was negligence per se. But manifestly in Phillips's journey the defective bell ringer was merely the occasion, and not the proximate cause, of the accident. Though the Employers' Liability Act of April 22, 1908 (Comp. St. §§ 8657–8665), imposes liability for an injury "resulting in whole or in part" from negligence in failing to maintain the locomotive in the prescribed condition, nevertheless it necessarily remains true that the partial negligence must be of the same causal nature as if no other element of negligence was present. St. Louis, etc., Ry. Co. v. McWhirter. 229 U. S. 265, 33 Sup. Ct. 858, 57 L. Ed. 1179; Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 36 Sup. Ct. 406, 60 L. Ed. 732; Louisville, etc., Ry. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931; Lang v. New York Central R. R. Co., 255 U. S. 455, 41 Sup. Ct. 381, 65 L. Ed. 729.

2. Respecting the allegation that the pop valve was defective at the time of the accident, there was no evidence which could have justified the trial judge in permitting the jury to base a verdict upon guesswork or conjecture that the cause of the subsequent lifting of the valve at a pressure of 215 or 220 pounds, as testified to by two of Phillips's witnesses, was due to the railroad company's negligence in failing to maintain the valve in lawful condition prior to and at the time of the accident rather than to a subsequent temporary and accidental interference with the springs of the valve.

[2] 3. Though the Employers' Liability Act abolishes the "fellow-servant" defense, it does not mean that interstate carriers must in all

events pay for injuries to their servants. Otherwise there would be no room for the concomitance of occurrences resulting in an injury, which concomitance was beyond the ordinary prophetic vision, based on experience, of the "reasonably prudent man." If the railroad company is to be held liable, it must be because Keelor, as a reasonably prudent engineer, failed to foresee the probability that the concomitance of the above recited circumstances, uniting at a fraction of a second of time, might result in an injury to Phillips. The case, therefore, should be viewed as if Phillips were suing Keelor for the damages.

Phillips fell off the engine because the pop valve lifted; the pop valve lifted because the steam pressure increased from 180 pounds to 205 pounds during the few minutes that Phillips was absent from his fireman's post; and the 25 pounds of increase in steam pressure during those few minutes was due to the condition and action of the fire during that same time. The record is devoid of any evidence tending to show the condition of the fire when Phillips left it; or to show from readings of the pressure gauge or otherwise prior to and at the time when Phillips left his post whether the pressure was falling or rising, or had been for some time remaining stationary; or to show whether Phillips had been shoveling in large lumps of coal which would tend to smother the fire, or had been heaping in coal dust which might as effectually inflame the fire as would powder. The record is devoid of any evidence to show the conditions under which the fire in the fire box of a standing locomotive would cause the steam pressure to rise from 180 pounds to 205 pounds within five minutes. Certainly Phillips, who, the record shows, was an experienced and skillful fireman, knew the conditions of the fire and the register of the steam gauge when he left his post. He took with him the piece of wire to replace the missing cotter pin, and therefore had to some degree estimated the time during which he would be absent from his post. Now, if Keelor had stayed on the engine and had kept his eye on the pressure gauge and had seen it rapidly mounting from 180 pounds and nearing the 205-pound limit, he could have injected cold water into the boiler and thus have kept down the steam pressure.

Did he fail to act as a reasonably prudent engineer in leaving the cab, while Phillips was going to and returning from the bell ringer, for the purpose of performing his own independent work of oiling the engine? The record is devoid of any evidence to show what practice was followed by reasonably prudent engineers under these circumstances; that is, there was no verbal testimony on the subject. There were, however, certain actions on the part of these experienced and skillful men which throw light on the situation. There is a presumption of fact that Phillips did not intend to maim himself. With full knowledge of all the conditions respecting the fire and the consequent steam pressure, and the likelihood of any sudden rise of pressure, his judgment therefore was that under the circumstances he could perform the task he had undertaken of repairing the bell ringer with reasonable assurance of safety. If there was anything in the conditions when he left his post that might cause a reasonably prudent man to apprehend any danger from the popping of the valve, he could readily have told Keelor of those conditions and have asked him to keep an eye on the

pressure gauge, and see to it that the steam should not reach the popping point. His conduct under the circumstances, as we view it, was an expression to Keelor of his judgment on the situation as distinct and effective as if he had put it into words. Keelor had not only this assurance from Phillips's conduct, but his own judgment as an experienced and skillful engineer accorded with the judgment of Phillips. If Keelor is to be charged with knowledge of the fire conditions, surely Phillips had direct and immediate knowledge thereof. If Keelor was negligent in forming the wrong judgment of the number of minutes that the pressure would certainly remain under 205 pounds, then Phillips was also negligent in the same respect. Keelor cannot be charged with any negligence, unless, without any notice or request from Phillips, it was his duty under the circumstances to remain on the engine and watch the pressure gauge. It takes years of training and experience before railroads can safely intrust the lives of passengers and the safety of freight to the care of engineers. To permit a jury to find on this record that Keelor had failed to exercise the ordinary care of a reasonably prudent engineer would be to permit them to establish a standard from the common knowledge of the average person in other professions for the proper practice in the profession of locomotive engineer.

Both Keelor and Phillips are to be measured by the same standard. Negligence and contributory negligence are counterparts. In a recent case, Maher v. Chicago, Milwaukee & St. Paul R. R. Co., 278 Fed. 431, citing Hawley v. Chicago, Burlington & Quincy R. R. Co., 133 Fed. 150, 66 C. C. A. 216, we pointed out, respecting contributory negligence, that it is not enough to show that the plaintiff had an opportunity to observe, or in fact observed, certain physical conditions, but that the conditions should lead to the mental state of a reasonable apprehension of danger. Negligence must, of course, be measured by the same rule.

The judgment is affirmed.

EVAN A. EVANS, Circuit Judge (dissenting). I believe that a jury question was presented by the evidence showing the engineer's failure to co-operate with the plaintiff, who was undertaking a more or less hazardous task in repairing the bell ringer.

Differences of opinion concerning the possible and yet legitimate finding of a jury respecting the actions of the so-called "reasonably prudent man" account for our inability to agree. At best this supposititious individual cannot be endowed with qualities and mental attributes definable in absolute terms. He is in a sense the creature of the composite mind of the jury. Viewed from the standpoint of 12 jurors, he may be chargeable with more information and possessed of greater insight than he would be were he the creation of the trial judge, who, a jury being waived, would determine the presence or absence of ordinary care. It likewise must be conceded that different members of the same jury might well entertain different views concerning the mental stature of a "reasonably prudent man."

Yet he is the yardstick, his action the criterion, by which the conduct and actions of others must be measured. Not being a fixed and

definite standard, it is not always easy for third parties to agree upon what his conduct would be in a given case. And the uncertainty grows and the field of legitimate inquiry is widened when the proper function of the judge is stated. For there is a vast difference between a finding that a servant did not measure up to the standard fixed by "the reasonably prudent man" and a finding that the record necessitates the submission of such question to the jury.

The exclusive function of the jury and the necessity of the judge recognizing that duty was pointed out in the recent case of Applebaum v. U. S. (C. C. A.) 274 Fed. 43. Courts cannot usurp this function of the jury. They cannot place fact against fact, inference against inference, or determine the weight of either. Our single duty is to determine whether there is any evidence or inference from evidence, *viewing such evidence and such inference most favorably to the plaintiff*, that would justify a jury in finding that Keelor's action, in leaving the engine cab while his coemployee was climbing over the top of the engine to make a needed repair, met the test set by the "reasonably prudent man."

The evidence justifies this statement: No written or prescribed rules are shown that govern the conduct of the two employees while one or both were engaged in repair work. A condition arose which made it impossible to proceed without repairing the engine. The automatic bell ringer failed to function. It was contrary to law and would have constituted negligence on the part of the engineer to run the engine without repairing the bell ringer, or causing it to be repaired. One or the other employee was therefore required to investigate and determine whether it could be adjusted. It was no more the duty of the fireman than of the engineer to do so. Both, as willing servants, were chargeable with the duty of adjusting it without sending for a machinist, if it could reasonably be done. Before sending for the machinist, either might well have endeavored to locate the trouble.

The engine was taking water and plaintiff turned the water spout in the tank of the tender. He was then in a position where he could most readily ascertain why the automatic bell ringer failed to ring, and at the same time determine whether he could repair it. Whether there was a missing cotter pin or some other defect in the bell ringer or its attachment was at the time unknown. The engineer was equally ignorant of the reason for the failure of the ringer to function. Plaintiff asked the engineer for the monkey wrench to take with him on his investigation, and the engineer handed it to him.

In front of the engineer was a steam gauge that registered at this time 180 pounds pressure. At 205 the pop valve would lift, and steam would be emitted with such force and suddenness as to make the position of one on top the engine insecure and dangerous. Not only was plaintiff required to walk over this pop valve in going to and from the bell ringer, but in fixing the bell ringer he was in comparatively close proximity to it, and its sudden popping could not be viewed other than as a dangerous occurrence. The engineer had it within his power to prevent the valve from lifting. To do so he could open the door to the fire box or turn in a little cold water. Either act would have

kept the pressure safely under 205 pounds. Plaintiff knew the engineer was in the cab, and he had a right to rely upon the assumption that the engineer would perform his duty.

Instead of remaining in the cab and lessening plaintiff's risk by keeping down the steam pressure, the engineer, *without notifying plaintiff that he was going to leave the cab,* and without knowing how long plaintiff would be on the engine, left the cab. The steam pressure, which could have been controlled by the engineer, rose; the danger point was reached; the pop valve popped, and a great mass of steam shot up. Plaintiff lost his balance, fell to the ground, and the loss of one leg was the toll.

The occurrence, the accident, the unfortunate result, were all due to the sudden escape of steam, which could have been controlled by the engineer, had he remained seated in his cab. Should he have foreseen it? Would our "reasonably prudent man" have left his post under these circumstances?

There are, it is true, many instances where the facts are so clear that the judge may say that none of the 12 jurors could fairly create a "reasonably prudent man" so far-sighted as to have anticipated that any injury would have resulted from the failure of one servant to do an omitted act. But this is not one of them.