## DOROTHY C. REYNOLDS v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 23, 1924.

No. 23,857.

**Questions of proximate cause and assumption of risk for the jury.**

1. A freight train in interstate commerce was distributing supplies to stations along the line. While gasolene was flowing from a tank car through a hose into the intake pipe of a pumping plant, a brakeman set his lighted lantern near the mouth of the intake pipe. For some unknown reason, the conductor pulled the nozzle of the hose out of the pipe and an explosion followed setting the hose and car on fire. In an attempt to cut off the blazing hose with a knife, the conductor suffered burns which caused his death. *Held* that whether pulling the nozzle of the hose out of the pipe was the sole, or only a concurring, cause of the accident was a question for the jury; *held* further that whether the attempt to cut off the hose was so reckless that the conductor should be deemed to have assumed the risk was also a question for the jury.

**Conductor not a volunteer intermeddler.**

2. Although it was the duty of those in charge of the supplies to unload the gasolene, the conductor in charge of the train was not a volunteer intermeddler in attempting to remedy whatever prevented it from flowing into the intake pipe properly.

[1]Reported in 199 N. W. 108.

**New trial on ground of improper statement of counsel.**

3. An improper statement of counsel in his argument to the jury does not require a new trial, unless it results in or excites prejudice.

Action in the district court for Douglas county by the special administratrix of the estate of Colby C. Reynolds, deceased, to recover $44,904 for the death of her intestate. The case was tried before Nye, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $24,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*F. G. Dorety* and *A. L. Janes*, for appellant.

*Tom Davis, Ernest A. Michel* and *Henry T. Ronning*, for respondent.

TAYLOR, C.

This is an action to recover damages for negligence which resulted in the death of plaintiff's intestate. The jury returned a verdict for plaintiff and defendant appealed from an order denying its motion for judgment non obstante or for a new trial.

Colby C. Reynolds, the deceased, was employed by defendant as conductor of a freight train running between New Rockford and Casselton in the state of North Dakota. On September 7, 1922, he left New Rockford for Casselton with a train of 32 cars, including 3 supply cars which were placed at the rear of the train immediately in front of the caboose. Two of these were tank cars—one containing kerosene; the other gasolene. The third contained the other supplies. The supplies were to be distributed to stations along the line. The train crew consisted of the engineer, fireman, conductor and 3 brakemen. The supply cars were in charge of a man from the store department named Mork who had two helpers to assist him in unloading and distributing the supplies. The train crew "spotted" the supply cars at the proper place at the different stations, and Mork and his helpers unloaded and distributed the supplies. It was no part of the duty of the train crew to assist in this work. About one o'clock at night they reached a bridge where

a pumping plant was located which was to receive a supply of gasolene. An iron intake pipe extended from the abutment of the bridge to the tank of the pumping plant which was down in the valley several hundred feet distant. The top of the intake pipe was at the side and a foot or more below the top of the stone abutment. The conductor "spotted" the gasolene car at this intake pipe. Knowing that they had scant time to complete the run within the 16-hour limit, he directed Mork to hurry, who answered that he would make it "snappy." The gasolene was drawn from the tank car through a hose about 20 feet long provided for that purpose. The car was also equipped with a pump operated by air which forced air into the tank for the purpose of increasing the flow through the hose. Mork placed the nozzle of the hose in the mouth of the intake pipe. The conductor and a brakeman were standing near by. Mork and the conductor had electric lanterns; the brakeman had the usual brakeman's lantern. Mork turned to the car and opened the valve to permit the gasolene to flow and then started the pump to increase the flow. The conductor or brakeman called to him to stop the pump. He did so and then turned and started toward the intake pipe to ascertain the trouble. He saw the brakeman's lantern standing on the abutment about 18 inches from the mouth of the intake pipe and saw the conductor pull the nozzle of the hose out of the pipe. The gasolene sprayed into the air and on the lantern, and there was a flash and a fire which extended along the hose to the tank and set the car on fire. The conductor and brakeman sprang down the bank and neither was injured at this time. Mork attempted to shut the valve and stop the flow of gasolene, but the blaze was so great that he was unable to do so. The conductor shouted to start the train and it started. He ran along at the side of the car and attempted to cut off the burning hose with a knife. This evidently resulted in spraying his clothing with gasolene which took fire and he ran down the bank "a mass of flames." Others rushed to his aid and tore off his burning clothing but he was burned so badly that he died 22 hours later.

The action is brought under the Federal Employers Liability Statute. The negligence relied upon is the act of the brakeman in needlessly placing his lighted lantern within 18 inches of the mouth of the intake pipe into which gasolene was being poured. That the jury could find that this was a negligent act is beyond dispute. Defendant called no witnesses, but rested on the testimony of the witnesses called by plaintiff.

Defendant contends: (1) That the sole cause of the accident was the negligent act of the conductor himself; (2) that the conductor was a volunteer intermeddler acting outside the line of his duty and that defendant was not liable to him for injuries sustained in consequence of such intermeddling; (3) that the act of the conductor in attempting to cut off the burning hose through which gasolene was flowing was so obviously dangerous that he must be deemed to have assumed the risk; and (4) that plaintiff's counsel was guilty of misconduct in his address to the jury which tended to, and did, influence the jury to return an excessive verdict.

1. We may concede that the act of the conductor in pulling the nozzle of the hose out of the intake pipe and allowing the gasolene to spray into the air and onto the lighted lantern was negligent; but if it was not the sole cause of the accident, but only a concurring cause, it would not relieve defendant from liability. Otos v. Great North. Ry. Co. 128 Minn. 283, 150 N. W. 922. Whether this act was the sole proximate cause of the explosion as claimed by defendant, or only concurred with the act of the brakeman in producing it as claimed by plaintiff, was, we think, a question for the jury. We cannot say that this act was so disconnected from the act of the brakeman as to constitute an independent intervening cause as a matter of law.

2. Mork and his helpers went with the supply cars for the purpose of unloading and distributing the supplies. It was not the duty of the train crew to assist in that work. But the conductor was in charge of the train and was expected to bring it to the end of the run within the time limit of 16 hours. When they reached the pumping plant, he knew they must hurry if they completed the trip within the time limit. There was evidently some trouble with

the flow of the gasolene into the intake pipe, the nature of which is not disclosed. Although it was the duty of others to discharge the gasolene, the conductor attempted to remedy this trouble. We cannot hold, as a matter of law, that in doing so he was a volunteer intermeddler. His duty as the representative of the defendant in charge of the train gave him a sufficient interest in the matter to take him out of the class of mere volunteers. White v. Great North. Ry. Co. 142 Minn. 50, 170 N. W. 849.

3. Both the hose and the car were on fire. Gasolene flowing through the hose was increasing the fire. If the fire reached the gasolene vapor in the tank, there was danger of an explosion which would destroy property and might imperil lives. It may seem to us, looking at the matter from this distance, that cutting the hose was obviously dangerous and likely to increase rather than check the fire, for it would not stop the flow of gasolene. But the conductor was suddenly confronted with an emergency, and in cutting the hose undoubtedly acted on the impulse of the moment in an attempt to prevent an explosion. We think it fair to assume that in his excitement he failed to realize or appreciate either the danger or the futility of his act. And whether, in view of all the circumstances, his conduct was so unreasonable and reckless that he should be deemed to have assumed the risk was, we think, a question for the jury. Berg v. Great North. Ry. Co. 70 Minn. 272, 73 N. W. 648, 68 Am. St. 524; Anderson v. Smith, 104 Minn. 40, 115 N. W. 743; Perpich v. Leetonia Mining Co. 118 Minn. 508, 137 N. W. 12; McKay v. Atlantic Coast Line Ry. Co. 160 N. C. 260, 75 S. E. 1081, Ann. Cas. 1914C, 412, and annotation.

4. In his argument to the jury, counsel, after vividly portraying the sufferings of the deceased and stating that the amount to be allowed therefor was for the jury to say, stated: "In one case in the United States Supreme Court a verdict was sustained where they paid $5,000 for half an hour of pain and suffering." This was clearly misconduct. There was no evidence which warranted the statement. Such evidence could not be admitted.

Stating the award made by another jury was improper. The statement tended to convey the impression that the court had ap-

proved the amount named, when in fact the court had stated in substance that the award seemed large, but that the matter of amount was not a question for reconsideration in that court. Improper argument by counsel should be promptly checked by the trial court, but does not require a new trial unless it causes prejudice to the party complaining, and whether a new trial should be granted rests largely in the discretion of the trial court which is in a better position than this court to determine whether prejudice has resulted. Smith v. Great North. Ry. Co. 133 Minn. 192, 158 N. W. 46, and cases cited. The court cautioned the jury that the argument of counsel was not evidence, and to give no undue weight to the statement, but might well have used stronger language. The court submitted the issues to the jury in an eminently fair and impartial charge to which no exception is taken, and we find nothing in the verdict which indicates that passion or prejudice entered into the making of the award. We have reached the conclusion that there is no sufficient reason for granting a new trial and the order is affirmed.