# A. D. SCHENDEL v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

December 11, 1925.

No. 24,825.

**Use of interstate freight car with defective uncoupling safety appliance in violation of Federal act negligence.**

1. The use, by a railway company, engaged in interstate commerce, of a freight car with a defective uncoupling safety appliance thereon, in violation of the Federal Safety Appliance Act, establishes negligence on the part of the company as a matter of law.

**Causal relation between violation of statute and injury to be pleaded and proved.**

2. In an action to recover for a death, under a violation of the Federal Safety Appliance Act, it is incumbent upon the plaintiff both to plead and prove causal relation between the violation of the statute and the injury.

**Presumption that deceased exercised due care for his safety.**

3. In an action to recover for a death, where there are no eye witnesses, the presumption is that the decedent was in the exercise of due care for his own safety.

**When proof must preponderate in favor of defendant's liability.**

4. Where the evidence presents two or more theories as to the manner in which an accident occurred, on one of which the defendant is liable, but on the other it is not, the proof must fairly preponderate in favor of the liability, or the action fails.

**When circumstantial evidence must show causal connection between violation of statute and injury.**

5. Where the evidence is wholly circumstantial, to entitle plaintiff to recover, the evidence must be something more than consistent with the plaintiff's theory of the case. It must tend to show a causal connection between the violation of the statute and the injury.

[1] Reported in 206 N. W. 436.

**Inference drawn from unreliable premises is unreliable.**

6. No inference of fact or of law is reliable, drawn from premises which are unreliable.

**What evidence does not establish required causal connection.**

7. The fact that decedent was compelled, by reason of the defective appliance, to do something he would not have otherwise done and, while so doing, was injured by something apart from the use of the appliance, does not, of itself, establish causal connection between the violation of the statute and the injury.

**When interstate company is liable to switchman taking defective car to repair track.**

8. The liability of an interstate railway company, under the Federal Safety Appliance Act, to a switchman injured through a violation of the act, exists, although the employe, when injured, was engaged in taking the defective car to the repair track for repairs.

1. See Master and Servant, 39 C. J. p. 820, § 1032; p. 1140, § 1331.
2. See Master and Servant, 39 C. J. p. 934, § 1169; p. 958, § 1185.
3. See Death, 17 C. J. p. 1304, § 167; Evidence, 22 C. J. p. 94, § 35.
4. See Evidence, 23 C. J. pp. 11, 12, § 1744.
5. See Master and Servant, 39 C. J. pp. 1050, 1051, § 1266.
6. See Evidence, 23 C. J. p. 56, § 1797 (Anno).
7. Master and Servant, 39 C. J. p. 1051, § 1266.
8. Master and Servant, 39 C. J. p. 387, § 503.

1. See notes in 20 L. R. A. (N. S.) 473; 41 L. R. A. (N. S.) 49; 18 R. C. L. p. 614; R. C. L. Supp. pp. 831, 832; 4 R. C. L. Supp. p. 1199.
2. See notes in 9 L. R. A. (N. S.) 345; L. R. A. 1915E, 516. 20 R. C. L. p. 43; 4 R. C. L. Supp. p. 1327; 5 R. C. L. Supp. p. 1075.

Action transferred to the district court for Yellow Medicine county to recover for the wrongful death of plaintiff's intestate. The case was tried before Baker, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*F. W. Root, C. O. Newcomb, A. C. Erdall, Daly & Barnard* and *Bert O. Loe*, for appellant.

*Davis & Michel* and *Paul D. Stratton*, for respondent.

QUINN, J.

This is an action by a special administrator to recover damages for the wrongful death of Charles Hilt, plaintiff's intestate, for the benefit of his surviving widow and three minor children. The cause of action is based upon a violation of the Federal Safety Appliance Act. Both the decedent and the defendant were engaged in interstate commerce at the time of the accident complained of. There was a verdict in favor of plaintiff of $24,000. The appeal is from an order denying defendant's alternative motion for judgment or for a new trial.

Decedent was 34 years of age. He was in the employ of the defendant as a switchman at its yards in Janesville, Wisconsin, in February, 1923. He was a member of a switching crew composed of a foreman, two switchmen, an engineer and a fireman. The tracks in that yard extend in an easterly and westerly direction. Just before the accident, the switch engine was on the main track, facing to the east and coupled onto the west end of a string of 12 freight cars, which was about to be switched. To the west of the point where the engine and string of cars were, was a passing track, and to the north of the passing track was the Mineral Point main track, both parallel with the main track. Branching from the Mineral Point track was track number 5, and a little farther west, branching from the same track, was the repair track.

The second, third and fourth cars from the east end of the string were "bad order cars", of which the most westerly one was a C. B. & Q. gondola car. Immediately to the west of the gondola car, and coupled to it, was a Great Northern box car which was in good order. It was the purpose of the crew, in switching the string of cars, to place the most easterly one on the transfer track, to place the three "bad order cars" on the repair track where they could be handled while being repaired, and to place the balance of

the string on track number 5. To accomplish this purpose, the engine pulled a considerable distance west on the main track, taking the entire string with it, then stopped and switched over onto the Mineral Point track, then pushed the string east on that track past both the repair track and track number 5, and placed the most easterly car on the string on the transfer track, then pushed the string farther east on the Mineral Point track to a point at or near where the accident occurred, for the purpose of cutting off the "bad order cars" and leaving them on that track while the engine placed the balance of the string on track number 5. The engine was then to return, couple onto the three "bad order cars" and place them on the repair track.

While the engine was pushing the string east on the Mineral Point track, switchman Frank E. Swan was riding on top about midway between the engine and the gondola car. He was the only person, seeing the movement of the train at the time of the accident, who testified as a witness at the trial. He was called by the plaintiff and testified, in effect, that he was riding on the fourth or fifth car from the engine; that it was about 2 o'clock in the morning; that they were about to stop and cut off the three "bad order cars" and leave them on the Mineral Point track while the engine took the remainder of the string to track number 5; that, as the string came to a stop, decedent approached the ends of the gondola and Great Northern cars, from the north, with his lantern; that decedent was the field switchman and, as such, it was his duty to make the uncoupling; that, as the lantern reached the end of the cars, he saw it rise up about 4 or 5 feet, as though the man carrying it was climbing up into the stirrup when the light disappeared from his sight; that the cars were standing still at the time the light passed from his view; that very shortly thereafter, there was a stop signal; that he then went down to the gondola car and that decedent's body lay midway between the rails, under the middle of the gondola car, with his head to the south and his legs across the north rail; that he was dead and there was blood on the wheels of the gondola car and also upon the wheels of the Great Northern

car and that they immediately notified the coroner; that the un-coupling had not been effected.

The gondola car was an open flat car, with sides about one-half the height of a box car, of all steel construction, such as soft coal is usually hauled in. There was a full length ladder and a stirrup on the north side of the car, at the westerly end, where the uncoupling lever was. This car was in bad order, in that a piece of iron, called an "S", was absent from the coupling device at its westerly end, so that the car could not be uncoupled from the Great Northern car by use of the uncoupling lever thereon.

The uncoupling lever on the Great Northern car was on the south side, at the corner next to the gondola car. It was in good condition so that the uncoupling of the two cars could be effected from the south side by use of that lever. There was a full length ladder and a stirrup on the south front corner where the lever was located. One purpose of the ladders and stirrups near the lever was to enable brakemen and switchmen to pass from one side of the train to the other while the cars are in motion.

It is alleged in the complaint, in effect, that, at the time of and previous to the accident, the defendant, negligently and contrary to the laws of the United States, used the car with the coupling in a defective and inoperative condition; that the car could not, because of such defective condition, be uncoupled from another to which it was coupled by use of the lever and without the necessity of the operator going between the ends of such cars; that, at the time of the accident, it became and was the duty of the decedent to un-couple the gondola car from the one next west of it to which it was coupled, and, that because of the defective condition of such apparatus, decedent could not uncouple the same by use of the lever.

The complaint then charges that, because of the defective coup-ling apparatus on the gondola car, decedent went between the end of that car and the adjoining Great Northern car to effect the un-coupling, and that, while attempting to make such uncoupling and while so between such cars, he was caused to be caught in a frog,

knocked to the ground by the moving cars and run over. If the evidence now before us is sufficient to sustain these allegations, the verdict is right and should stand. In the brief of plaintiff's counsel, considerable space is given to testimony had on a former trial; but we cannot, of course, take into consideration any fact disclosed in that record. It must be understood that, when we said upon that appeal (158 Minn. 378, 197 N. W. 744), that it might be found that Hilt went between the cars to lift the pin by hand, we were speaking of the evidence contained in that record.

The record here is most meager and unsatisfactory. The only witness called, who saw anything of the accident, was the switchman Swan. Defendant called no witnesses. The members of the switching crew were present at the trial, as counsel for defendant had promised opposing counsel they would be. According to the record, decedent was last seen approaching the standing cars from the north side, and when he reached the northwest corner of the gondola car, his lantern went up 4 or 5 feet as though he was going up into the stirrup on that corner. Immediately afterwards "a stop signal was given," and directly thereafter decedent's lifeless body was found between the rails, under about the middle of the gondola car. It appears that there was a "block or beam" extending across the front of the gondola car, outside of the box, and about the same height as the coupler. There is no testimony that the cars moved after decedent got to them. It is obvious that they did move and that they must have moved first easterly and then westerly, for there was blood on the east trucks of the Great Northern car and on the west trucks of the gondola. On whose signal the cars were moved, or on whose signal they were stopped, is not shown.

There can be no question that the defective uncoupling appliance on the gondola car, and the use of the car with it thereon, constituted a violation of the Federal Safety Appliance Act and established the negligence of the defendant as a matter of law. Texas & P. Ry. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 483, 60 L. ed. 874; M. & St. L. Ry. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61

L. ed. 995. It was the violation of an absolute duty, fixed and defined by law, and the omission of that duty was negligence per se. A citation of authorities upon this proposition is unnecessary. The basic question before us is, whether, in the record now before us, there are sufficient facts upon which it can be found that such negligence contributed proximately to cause the death of Charles Hilt. In cases of this character, it is incumbent upon the plaintiff to both plead and prove causal connection between the violation of the statute and the injury. Lang v. N. Y. C. R. Co. 255 U. S. 455, 41 Sup. Ct. 381, 65 L. ed. 729; St. L. & S. F. R. Co. v. Conarty, 238 U. S. 243, 35 Sup. Ct. 785, 59 L. ed. 1290; Perkins v. N. P. Ry. Co. (C. C.) 193 F. 219. Other cases in point are: Cary v. Los Angeles Ry. Co. 157 Cal. 599, 108 Pac. 682, 27 L. R. A. (N. S.) 764, 21 Ann. Cas. 1329; Prest-O-Lite Co. v. Skeel, 182 Ind. 593, 106 N. E. 365, Ann. Cas. 1917A, 474; Penna. Co. v. Hensil, 70 Ind. 569, 36 Am. Rep. 188; Sowles v. Moore, 65 Vt. 322, 26 Atl. 629, 21 L. R. A. 723, 20 R. C. L. 43.

It is the claim, on behalf of plaintiff, that the facts that decedent was upon the north side of the track with his lantern; that he was seen to move south to the northwest corner of the gondola car; that his light then disappeared from view; that it was decedent's duty to effect the uncoupling and that it is presumed he was in the performance of that duty, and that the pin lifter at that corner of the gondola car was out of repair, sufficiently support the theory that decedent was between the cars, endeavoring to lift the pin by hand, at the time he fell between the rails where his body was found. We do not understand that plaintiff now claims that the frog was a contributing cause. The coroner, who arrived before the body was removed, testified that the right hip, or upper part of the leg, was fastened in the frog. From his description and other testimony, it is clear that, by this, is meant the switch point rather than the frog, but the evidence will not sustain an inference that this portion of the body was caught in the switch point before decedent fell. The much more reasonable inference is that, after falling, his body was dragged or pushed along and wedged into the switch point.

Leaving out of view any question of the frog, it must be held that, if decedent went between the cars for the purpose of uncoupling them and while there for that purpose was knocked down and run over by the moving cars, his representative is entitled to recover for his death, regardless of any negligence or violation of any rule or assumption of risk on the part of the decedent. G. N. Ry. Co. v. Otos, 239 U. S. 349, 36 Sup. Ct. 124, 60 L. ed. 322, affirming 128 Minn. 283, 150 N. W. 922; Grand Trunk W. Ry. Co. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. ed. 838, Ann. Cas. 1914C, 168; Sprague v. W. C. Ry. Co. 104 Minn. 58, 116 N. W. 104; Burho v. M. & St. L. R. Co. 121 Minn. 326, 141 N. W. 300; Ahrens v. C. M. & St. P. Ry. Co. 121 Minn. 335, 141 N. W. 297.

It is the contention of the defendant that the cause and manner of the accident is wholly unproved, or at least that it is left in the realm of doubt and conjecture. It contends that the inference, that decedent got upon the gondola car and was passing over the end of it to get to the south side and use the pin-lifter at the southeast corner of the Great Northern car, is not only consistent with the proven facts, but that it is the more reasonable inference.

If decedent was, in fact, passing over the end of the gondola car in order to get on the south side and there effect the uncoupling by operating the lifting lever on the Great Northern car and, in the journey, slipped and fell between the two cars, the defective lever did not proximately cause his fall. If such were the fact, his fall and resulting death were not caused by the defective lever on the gondola car. McCalmont v. Penna. R. Co. (C. C. A.) 283 F. 736. Had the lever been in perfect condition, it would not have prevented his slipping and falling on his way across, nor would its imperfect condition, in a legal sense, proximately contribute to his fall. To say that, but for the defective appliance, he would not have taken the journey, is not enough to establish causal connection between the violation of the statute and the injury. Bohm v. C. M. & St. P. Ry. Co. 161 Minn. 74, 200 N. W. 804; Goneau v. M. St. P. & S. S. M. Ry. Co. 154 Minn. 1, 191 N. W. 279; Phillips v. Penna R. Co. (C. C. A.) 283 F. 381. The fact that decedent was compelled, by

reason of the defective appliance, to do something he would not have otherwise done, and while so doing was injured by something apart from the use of the appliance, does not, of itself, establish causal connection between the violation of the statute and the injury. Davis v. Wolfe, 263 U. S. 239, 44 Sup. Ct. 64, 68 L. ed. 284; Boldt v. Penna. R. Co. 245 U. S. 441, 38 Sup. Ct. 139, 62 L. ed. 385; McDougall v. A. T. & S. F. Ry. Co. 106 Kan. 135, 186 Pac. 1028; Devine v. Chicago & C. R. R. Co. 259 Ill. 449, 102 N. E. 803.

The state of the record is such as to furnish support for both of the theories advanced. It is claimed, on behalf of the plaintiff, that the evidence points with greater certainty to the first theory, maintaining however that, if the second theory be accepted by the jury, still he is entitled to recover. To sustain the theory that decedent was between the cars, in an attempt to uncouple them, is to invoke the presumption that decedent was doing his duty in trying to effect the uncoupling. But going over to the other side to use the good appliance, was equally in line with his duty to effect the uncoupling. It is much more consistent with his duty to uncouple them in a safe and proper manner, than to adopt a method full of danger and in violation of the company's rules.

In an action to recover for a death, where there are no eye witnesses, the well-established presumption is that the decedent was in the exercise of due care for his own safety. This presumption sustains the inference that decedent, in the instant case, was passing over the car so that he might use the safer method of making the uncoupling. To this may be added the undisputed testimony of the witness, Swan, that he saw decedent's lantern go up apparently 4 or 5 feet as though the man carrying it was climbing up to the stirrup to pass over the gondola car, and the further fact that there was a block or beam extending across the front of it on which he could walk in going across.

The rule is well-settled that, where the evidence presents two or more theories or possibilities as to the manner in which an accident occurred, on one of which the defendant is liable, but on the other it is not, the proof must fairly preponderate in favor of the liability,

or the action fails.   In Orth v. St. P. M. & M. Ry. Co. 47 Minn. 384, 50 N. W. 363, it is said that "it is not enough that the evidence leaves the matter *in equilibrio* as to whether the injury was produced by a cause for which the defendant was responsible, or by one for which it was not responsible, and *a fortiori* no recovery can be had if it is more probable that it was produced by the latter." It would seem that the most that can be said is, that the evidence here is consistent with plaintiff's theory that decedent was attempting to effect the uncoupling from a position between the cars.  However this may be, to entitle the plaintiff to recover, the evidence must be something more than consistent with this theory, it must tend to show a causal connection with the negligence charged and the injury sustained.  It is incumbent upon the plaintiff, not upon the defendant, to show how the accident happened.  The rule has been recently stated by this court, and the authorities are cited in McNamee v. Hines, 150 Minn. 97, 184 N. W. 675, and need not be repeated here.  Suffice to say that plaintiff's theory must be established by evidence reasonably certain and convincing to an unbiased mind, and, until there is some such evidence, there can be no recovery.  Swenson v. Erlandson, 86 Minn. 263, 267, 90 N. W. 534.

If it were shown that the decedent, at the time of his fall, was between the cars for the purpose of uncoupling them, the conclusion would follow that his death was caused by the defective uncoupling device on the gondola car.   The language in U. S. v. Ross, 92 U. S. 281, 23 L. ed. 707, is pertinent.  "No inference of fact or of law is reliable drawn from premises which are uncertain."   Patton v. T. & P. Ry. Co. 179 U. S. 658, 21 Sup. Ct. 275, 45 L. ed. 361.   This may be another case that calls loudly for a Workmen's Compensation act for the benefit of all railway employes.  A new trial must be granted.

Reversed.


DIBELL, J. (dissenting.)

I dissent from the conclusion that the evidence, viewed and weighed as the jury might view and weigh it, does not permit a re-

covery because of its failure to show a causal connection between the violation of the Safety Appliance Act and the death of the plaintiff's intestate. I do not disagree with the general propositions of law stated in the opinion.